## Perry's Adm'x v. Inter-Southern Life Insurance Co.

(Decided May 8, 1934.)

BEN F. GARDNER and IRVING WALKER for appellant.

BEN S. WASHER, EDWARD P. HUMPHREY, MARVIN TAYLOR and L. H. HILTON for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER—Reversing.

This is the second appeal of this case and it is argued as the only ground for reversal that the court erred in instructing the jury. The essential facts and

evidence introduced on the first trial are discussed at length in the former opinion which will be found in 248 Ky. 491, 58 S. W. (2d) 906, 908.

The insurance policy which is the basis of this action insured the appellant's decedent, James Perry, "against death or disability resulting directly, independently and exclusively of all other causes from bodily injuries effected solely through external, violent and accidental means and sustained by the insured in the manner following. * * *

"[A] By being struck or knocked down or run over while walking or standing in or on a public highway, by any automobile, motorcycle or bicycle or any vehicle propelled by steam, cable, electricity, naptha, gasoline, horse, compressed air or liquid power, [excluding injuries sustained while working in a Public Highway, or while on a Railroad Right of Way]."

The evidence offered in behalf of appellant on the last trial is in substance and effect practically the same as that introduced on the first trial. In addition, however, one or two witnesses were introduced by appellee on the last trial who testified that immediately before the accident out of which decedent's injuries grew, he was seen leaning against the mail box which later was found in the street near his body and one of these witnesses testified that she saw decedent and the mail box fall into the street. However, a written statement alleged to have been signed by this witness was introduced in evidence for the purpose of impeachment.

In summing up the nature and effect of the evidence given on the first trial it is said in the former opinion:

"The nature and extent of the injuries inflicted on Perry, and the presence of motor-driven vehicles at the time and place he was injured, without any evidence whatsoever tending to show that his injuries could possibly have been inflicted other than by a passing motor vehicle, authorized and required submission of the case to the jury."

Counsel for appellee are insisting that the instruction given by the court fairly submitted the issues made by pleading and proof and therefore the judgment should be affirmed. They make no argument with reference to the failure of the court to peremptorily in-

struct the jury to find for appellee; however, in passing to a consideration of the ground relied on for reversal, it may be said that there is nothing in the additional evidence to which reference has been made to warrant a conclusion different from that reached on the former appeal with respect to the submission of the case to the jury.

Without going into detail, we refer to the former opinion for a statement of the evidence as to traffic conditions in the street at and near the time of the accident. One witness who was on the opposite side from where decedent fell, testified that when his attention was attracted by the noise of the falling mail box, he saw that an accident had happened and started to where decedent had fallen but had to wait a minute or two for the traffic to pass before he could cross the street. Others also testified as to passing traffic. This was referred to by witnesses as "traffic," "automobile traffic," "machines," etc.

Appellant offered an instruction authorizing a finding for her if the jury believed from the evidence that James W. Perry received his injuries "by being struck by a moving vehicle propelled by steam, cable, electricity, naptha, gasoline, horse, compressed air or liquid power."

The court refused to give the offered instruction and gave one which only authorized a finding for appellant if the jury believed from the evidence that Perry received his injuries by being struck by "any automobile," and no instruction was given defining the term "automobile" as used therein.

It is argued by counsel for appellant that the word "automobile," as understood by jurors and laymen generally, has a restricted meaning and does not include trucks, busses, or motor vehicles, other than the smaller type designed alone for the carriage of passengers.

On the other hand it is asserted by counsel for appellee that the term "automobile" has a definite popular significance and includes within its scope and meaning all motor traction vehicles propelled by gasoline, electricity, etc., and used for the transportation of persons or merchandise over ordinary roads, and is sufficiently comprehensive to include auto-trucks.

In the case of Life & Casualty Co. of Tenn. v. Met-

calf, 240 Ky. 628, 42 S. W. (2d) 909, 911, the court, after a review of the definitions of the term "automobile" as given by various courts and text-writers, sums up as follows:

"It is our conclusion that the word 'automobile' is the general name adopted by popular approval of all forms of self-propelling vehicles for use on the highways and streets, and our application of it herein is in harmony with the definitions, supra."

In that case, the court was construing a policy indemnifying against injuries arising out of collision or by any accident to any private motor driven vehicle. In the course of the opinion the court reiterated the general rule that "a contract of insurance will be construed strictly against the insurer and liberally in favor of the insured," and following that and other rules of construction adverted to in the opinion concluded that the Ford truck was included within the term "private motor driven vehicle" as used in the policy.

In practically all the cases cited, the court, in defining the term "automoble," was construing either an insurance policy or a regulatory or tax statute or ordinance. As indicated in the opinion, the construction of the word "automobile," "not depending upon any disputed facts, was for the court and not the jury."

Here, the policy itself gives to the word "automobile" a much more restricted meaning than that contended for by counsel for appellee since it does not insure alone against injury inflicted by "any automobile, motorcycle or bicycle," but also injuries inflicted by "any vehicle" propelled by gasoline or any of the other fuels or forces specified in the quoted provisions of the policy. If merely the word "automobile" had been used in the policy without an express provision restricting the meaning of the term as therein used, the rules relating to the construction of insurance contracts as set forth and followed in Life & Casualty Co. of Tenn. v. Metcalf, supra, would require the broader definition and construction of the term as was given in that case; but this does not mean that where one seeking to recover under such a provision for injuries received by being struck by a motor truck, the trial court should leave it to the jury to construe the term "automobile" as used in the policy. The court in construing the provisions of

this contract should manifest at least as much liberality toward the insured .as does the policy itself and should not by instruction or otherwise limit or restrict its express provisions.

Our conclusion is that in the proven circumstances the court, in instructing the jury, should have followed the language of the quoted provision. of the policy or should have defined the word "automobile" as indicated in Life & Casualty Co. of Tenn. v. Metcalf, supra.

For the reasons indicated, the judgment is reversed and the cause remanded for proceedings consistent with this opinion.