[No. 3497–1. Division One. July 18, 1977.]

GENERAL INSURANCE COMPANY OF AMERICA, *Respondent,*
v. INTERNATIONAL SALES CORPORATION,
*Appellant.*

*Lee, Smart, Cook, Dunlap & Biehl, P.S., Inc., Richard J. Dunlap*, and *John F. Biehl*, for appellant.

*Leo A. Anderson* and *R. Scott Fallon*, for respondent.

SWANSON, J.—General Insurance Company of America (General Insurance) brought this action against International Sales Corporation (International Sales) and Ameron, Incorporated (Ameron), seeking a declaratory judgment for the purpose of avoiding liability coverage of a claim asserted by Ameron against International Sales. In its answer to the complaint, International Sales pleaded affirmatively that General Insurance had a duty to defend the action and pay any damages awarded Ameron. The action was tried to the court without a jury, and resulted in findings of fact, conclusions of law, and judgment declaring no coverage. International Sales appeals; we affirm.

The facts are these: In June 1969, International Sales, a corporation engaged in the sale and distribution of marine and industrial supplies, purchased a "special multi–peril policy" from General Insurance which included "blanket liability insurance." In February 1973, Ameron filed a complaint in the United States District Court for Oregon against International Sales claiming $267,000 for damage to the interior coating of some pipe. The material paragraphs of Ameron's complaint are:

On or about February 26, 1969, defendant International Sales Corporation began delivery to plaintiff in Portland, Oregon of certain quantities of Tarset C200 epoxy coating to be used by plaintiff as interior coating on metal pipe in connection with the construction project in Centralia, Washington.

The coating above referred to was applied by plaintiff at its facility in Portland, Oregon, in accordance with instructions supplied by defendants, and following its introduction into service, the coating delaminated and failed on or about November 22, 1971.

The delamination and failure referred to above were the direct and proximate results of the negligence and breaches of warranty of defendants in the sale of said coating and the supplying of instructions therewith.

As a proximate result of the failure and delamination referred to above, plaintiff was required to effect repairs to the interior of said pipe, all to its damage in the sum of $267,000.00.

International Sales tendered the defense to General Insurance, which rejected it and brought this action. The trial court, after noting the sale of the epoxy and its use by Ameron as an internal coating on metal pipe, found that the delamination or failure of the coating was evidenced by peeling or chipping inside the pipe and that Ameron was required to make repairs by overcoating or relining the interior of the pipe with a cement mortar.

The pertinent coverage with the exclusions is as follows:

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, caused by an occurrence. The company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient. The company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

EXCLUSIONS

This insurance does not apply:

(a) to bodily injury or property damage included within the war hazard with respect to liability assumed by the insured under any contract or agreement or expenses for first aid under the Supplementary Payments provision;

(b) to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(c) to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured; but this exclusion does not apply to (1) any domestic employee, or (2) liability assumed by the insured under any contract;

(d) to property damage: (1) to property owned or transported by the insured; (2) to property occupied by or rented to the insured, except damage to a rented residence or private garage caused by a private passenger automobile; (3) to property under bailment to the insured (except injury to or destruction of such property arising out of the use of elevators or escalators or to liability assumed under sidetrack agreements); (4) to that particular part of any property (a) upon which operations are being performed by or on behalf of the insured, or (b) out of which such injury or destruction arises; (5) to premises alienated by the named insured arising out of such premises or any part thereof; (6) to the named insured's products arising out of such products or any part of such products; (7) to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

But parts (2) and (3) of this exclusion do not apply under Coverage L to property damage included within the fire hazard;

(e) to bodily injury or property damage resulting from the failure of the named insured's products or work completed by or for the named insured to perform the function or serve the purpose intended by the named insured, if such failure is due to a mistake or deficiency in any design, formula, plan, specifications, advertising material or printed instructions prepared or developed by any

insured; but this exclusion does not apply to bodily injury or property damage resulting from the active malfunctioning of such products or work;

(f) to damages, because of property damage, due:

(1) to the cost of repairing or replacing any defective goods or products manufactured, sold, handled or distributed by the named insured or defective work completed by or for the named insured;

(2) to the loss of use of any such defective goods or products or completed work or to damages resulting from the loss of use of such defective goods or products or completed work;

(g) to damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the named insured's products or work completed by or for the named insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein;

International Sales assigned error to most of the trial court's findings of fact and conclusions of law. However, the gravamen of International's argument on appeal is that the Ameron complaint in the federal court action sufficiently alleged property damage so as to invoke the coverage clause of the policy under discussion. Once having satisfied itself that the policy indeed applies, International Sales then argues that none of the exclusionary provisions in the policy applies to the present factual situation. While we agree that a 2–step process is necessary to ascertain whether coverage exists, we do not agree with the conclusion reached by International Sales in its argument.

■■ In order for the policy to have any effect whatsoever, there must necessarily exist some property damage or personal injury. The type of damage contemplated by the policy is not damage to the insured's product; rather, the insured's product must cause property damage to another object. In the instant case, it is imperative that the Tarset C–200 epoxy coating cause damage to the pipe to which it was applied. Among the findings of fact and conclusions of

law entered by the trial court, the crucial finding is the following:

> That there was no separate physical damage to the pipe itself such as any cracking, splitting, breaking, or melting of the pipe. That the damage found was solely with regard to the Tarset C–200 interior coating.

Finding of fact No. 9. If, in fact, there was no damage to the pipe itself, then by the plain meaning of the policy, no coverage exists. As a court of review, it is our responsibility to affirm the finding if, in fact, substantial evidence supports it. After independently reviewing the record as it appears before this court, we must conclude that it contains substantial evidence to support the factual findings made by the trial court. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959).

The complaint in the King County Superior Court action contains no allegations that property damage occurred to the pipe,[1] as International Sales would have us believe. Moreover, in a deposition of one of Ameron's sales managers, Roy H. Mickley, specifically referred to by the trial court, various questions were posed as to damage to the pipe:

Q It's a general question. Did the pipe crack or split or break or melt? Was there any damage to it?
A Oh, no, to my knowledge there would be nothing like that.
Q Okay, the damage then that was found was solely with regard to the interior coating, is that correct?
A Yes.

In interrogatories propounded to Ameron and again referred to by the trial court in its findings of fact and conclusions of law, the following questions were posed:

> 2. Does Ameron claim damages against International Sales for any repair costs connected with the pipe in question other than those costs for cleaning and/or removing the Tarset 200 epoxy resin from the interior of

---

[1]The complaint of Ameron in the federal court action in Oregon is made a part of the complaint in the present state court action seeking declaratory judgment.

the pipe and replacing it by relining or overcoating the interior of the pipe with another material?

ANSWER: No.

3. Is Ameron claiming money damages for any physical damage to the pipe in question that was *not* corrected by the repair process of cleaning the Tarset 200 product from the interior of the pipe and replacing it by relining or overcoating the interior of the pipe with another material?

ANSWER: No.

In Ameron's amended answers to requests for admission, the following admission was made:

9. Admit that the said pipe itself was not cracked, split, broken, melted or otherwise physically damaged other than that the interior of the pipe had to be cleaned and recoated or relined with another material due to the delamination and/or failure of the Tarset 200 Epoxy Resin.

*Response:* Generally admitted; however, the pipe did rust and holes were cut in the pipe to enter and remove the defective resin and reinstall another coating.

From the foregoing we must conclude that the finding entered by the trial court is supported by substantial evidence. Perhaps what is even more persuasive is the fact that there is no evidence showing that the pipe was damaged or even that Ameron's complaint is based on damage to the pipe. In such a circumstance, we conclude that the challenged finding is supported by substantial evidence.

In support of its position, International Sales places great reliance on the Minnesota decision of *Hauenstein v. St. Paul–Mercury Indem. Co.,* 242 Minn. 354, 65 N.W.2d 122 (1954). While it is apparent that the factual similarities between the present case and *Hauenstein* are significant, the language of the two insurance policies are not so equally similar. The *Hauenstein* policy as set out by the court stated:

At all times herein plaintiffs were covered against liability for accidental property damage by an insurance contract with the defendant insurance company under which contract the defendant–insurer agreed:

"To PAY any loss by reason of the liability imposed by law or contract upon the Insured for damages because of injury to or destruction of property, including the loss of use thereof, caused by accident."

The policy also contained an exclusionary clause providing that:

"This Policy does not apply:
* * * * *

"* * * to injury to or destruction of * * * any goods or products manufactured, sold, handled or distributed by the Insured * * *;"

*Hauenstein v. St. Paul–Mercury Indem. Co., supra* at 355–56. The policy coverage clause and exclusionary language found in *Hauenstein* are far less detailed than those appearing in the clauses under consideration here. In *Kyllo v. Northland Chem. Co.,* 209 N.W.2d 629 (N.D. 1973), the *Hauenstein* decision is cited as typical of those of a previous era construing now defunct insurance clauses. In the *Kyllo* case, certain farmers purchased a pre–emergent herbicide from defendant chemical company. The herbicide was verbally represented to control weeds in the farmers' bean fields. However, despite application of the chemical, weeds still grew causing a decreased yield. The Kyllos then sued stating that property damage had occurred. The court reviewed the insurance policy which, with minor exceptions, is identical to that under scrutiny today, and concluded that there was no physical damage to the beans since the herbicide did not directly harm the beans. The herbicide merely failed to work as expected. The court went on to state that that failure was specifically excluded from coverage by an exclusion clause similar to that found in (e) of General Insurance Co.'s policy.

In *Liberty Bldg. Co. v. Royal Indem. Co.,* 177 Cal. App. 2d 583, 587, 346 P.2d 444, 446–47, 2 Cal. Rptr. 329, 331–32 (1960), an exclusionary clause substantially similar to General's was construed to mean that

if the insured becomes liable to replace or repair any "goods or products" or "premises alienated" or "work completed" after the same has caused an accident because of a defective condition, the cost of such replacement or repair is not recoverable under the policy. However, if the accident also caused damage to some *other* property or caused personal injury, the insured's liability for such damage or injury becomes a liability of the insurer under the policy, and is not excluded. For example, if a contractor builds a house and as a result of an improper mixture of the stucco, water is absorbed into the walls and the stucco cracks and falls off and a child is injured by the falling stucco, the injury to the child would not be excluded under Exclusion (f) but the replacement cost of the stucco would be excluded. Also, if the water absorbed into the walls should reach the interior walls and injure a valuable painting hanging there, the damage to the painting would be recoverable under the policy while the damage to the walls would not.

Inasmuch as there is no evidence or allegation that property damage occurred to the pipe, we cannot sustain International's challenge to the findings.

International Sales also contends that exclusion (e) of General Insurance's policy does not apply since it specifically says that only printed instructions are excluded. However, the complaint merely alleges that negligent instructions were given; it does not further delineate whether those allegedly negligent instructions were oral or written. In fact, the first time the issue of oral instructions arose occurred after the trial on a motion for reconsideration. It would appear that appellant is merely trying to litigate anew an issue not actually reached by the trial court or carried forward in a specific assignment of error on appeal. This court declines to follow appellant's lead.

Affirmed.

Farris, C.J., concurs.

Williams, J.—I dissent. There is no quarrel with the facts. The only question is whether what occurred is "property damage" within the intent of the policy. When the

meaning of a word or phrase in an insurance policy is not dependent on disputed facts, the construction thereof is a question of law for the court. 1 R. Anderson, *Couch Cyclopedia of Insurance Law* § 15.3 (2d ed. 1959); *Perry v. Inter–Southern Life Ins. Co.*, 254 Ky. 196, 71 S.W.2d 431 (1934). The majority states that because the condition caused by the delamination of the epoxy could be repaired by removal and replacement of it, the pipe was not damaged. Restoration of the pipe may have required the mere removal of one coating and the application of another, but that does not mean that the pipe was undamaged any more than a vandalized work of art is not damaged when sprayed with removable paint. In *Hauenstein v. St. Paul–Mercury Indem. Co.*, 242 Minn. 354, 65 N.W.2d 122 (1954), a type of plaster failed and had to be replaced after being applied to the walls and ceilings of a building. In finding coverage under a similar indemnity policy, the court said:

> Aside from any injury to the plaster itself, was the building injured and damaged by its application? It is undisputed that after this new type of plaster had been applied it shrunk and cracked to such an extent that it was of no value and had to be removed so that the walls and ceilings could be replastered with a different material. No one can reasonably contend that the application of a useless plaster, which has to be removed before the walls can be properly replastered, does not lower the market value of a building. Although the injury to the walls and ceilings can be rectified by removal of the defective plaster, nevertheless, the presence of the defective plaster on the walls and ceilings reduced the value of the building and constituted property damage.

*Hauenstein v. St. Paul–Mercury Indem. Co., supra* at 357–58.

General Insurance's responsibility to protect International Sales arises from the following assertions in Ameron's complaint in federal court:

> The delamination and failure referred to above were the direct and proximate results of the negligence and breaches of warranty of defendants in the sale of said coating and the supplying of instructions therewith.

As a proximate result of the failure and delamination referred to above, plaintiff was required to effect repairs to the interior of said pipe, all to its damage in the sum of $267,000.00.

These paragraphs constitute an allegation of property damage.

The majority dismisses International Sales' argument that exclusion (e) does not apply by saying that whether the instructions were oral or written was not delineated in Ameron's complaint and anyway the point was not raised until a motion for reconsideration was filed. Actually, the subject of oral instructions was pleaded, and proved by uncontradicted evidence. In its answer to General Insurance's complaint, International Sales incorporated its answer in the federal case brought by Ameron, which reads in part as follows:

For its second affirmative defense, the defendant International Sales Corporation alleges that the plaintiff, Ameron, Inc. did fail to apply the Tarset C200 epoxy coating in compliance with instructions given to the said plaintiff, Ameron, Inc., by defendant United States Steel Corporation or by the defendant International Sales Corporation for causing the said coating to delaminate and fail on or about November 22, 1971.

A witness, who was not contradicted, testified that personnel of International Sales went to Ameron's job site to demonstrate the process of application. The instructions included the storing, mixing and proper handling of the material. The significance of the oral instructions given at the job site appears in another portion of the witness' testimony when he said:

With coal tar epoxies, I would say that probably 95 percent of the coal tar epoxy failures that we have ever encountered are as a result of overcuring, with the other five percent being made up of contamination, moisture, improper mixing of the product, which I guess is in the application end of it, and to a very remote extent, off-spec material.

Thus, the question of damage caused by faulty oral instructions was timely raised and presented for decision by the court.

It is essential, therefore, that the court enter findings on the question of whether there was negligence in the supplying of oral instructions. The judgment should be vacated and the cause remanded with directions to make the necessary findings, followed by appropriate conclusions of law and judgment.

Petition for rehearing denied January 26, 1978.

Review by Supreme Court pending June 2, 1978.