HARTFORD FIRE INSURANCE COMPANY; Twin City Fire Insurance Company, Plaintiffs-counter-defendants—Appellees,

v.

WASSER HIGH–TECH COATINGS INC, Defendant-counter-claimant—Appellant.

No. 01–35325.

D.C. No. CV–98–01623–JET.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 7, 2002.

Decided Aug. 12, 2002.

Before BRUNETTI, TROTT and McKEOWN, Circuit Judges.

## MEMORANDUM *

Wasser High Tech Coatings, Inc. ("Wasser") appeals the district court's order granting declaratory judgment in favor of Hartford Fire Insurance Company ("Hartford"). Specifically, Wasser argues that Judge Tanner erred in setting aside a prior entry of partial summary judgment by Judge Coughenour for Wasser on the issue of property damage, that the district court erred in holding that Hartford did not act in bad faith in processing Wasser's claim, and that Wasser is entitled to attorney fees and costs incurred in an attempt to enforce its rights under the insurance policy. We disagree, and affirm the judgment of the district court.

## I.

Judges sitting on the same court should not attempt to overrule the decisions of each other unless "cogent reasons" or "exceptional circumstances" appear. *Castner v. First Nat'l Bank*, 278 F.2d 376, 380–81 (9th Cir.1960). "The prior decision should be followed unless: (1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

different evidence was adduced at a subsequent trial." *Delta Savings Bank v. United States*, 265 F.3d 1017, 1027 (9th Cir. 2001) (quoting *Jeffries v. Wood*, 114 F.3d 1484, 1489 (9th Cir.1997)) (en banc).

Judge Tanner did not abuse his discretion in setting aside Judge Coughenour's prior summary judgment order. The record shows that property damage, as defined in the Hartford insurance policy and interpreted under Washington law, did not occur. Under Washington law, if an insurance policy covers property damage and personal injury, "[in] order for the policy to have any effect whatsoever, there must necessarily exist some property damage or personal injury." *General Ins. Co. of America v. Int'l Sales Corp.*, 18 Wash.App. 180, 566 P.2d 966, 968 (1977). In *General Ins. Co.*, the Washington Court of Appeals considered a case markedly similar to ours. International Sales sold epoxy to a pipe manufacturer, who applied it to seal the inside of pipes. *Id.* at 967. The epoxy delaminated and peeled off, and the pipe manufacturer was forced to remove the epoxy at substantial cost. *Id.* International Sales had a property damage liability insurance policy nearly identical to the one at issue in this case in terms of both coverage and exclusions. *See id.* at 967–68. After the insurance company rejected the claim, the trial court found that the claim was not covered by the policy because "there was no separate physical damage to the pipe itself, such as any cracking, splitting, breaking, or melting of the pipe ... [T]he damage found was solely with regard to the Tarset C–200 interior coating." *Id.* at 969. The Court of Appeals agreed, holding that "we must conclude that the finding entered by the trial court is supported by substantial evidence. Perhaps what is even more persuasive is the fact that there is no evidence showing that the pipe was damaged or even that

Ameron's complaint is based on damage to the pipe." *Id.*

■ We are faced with the same situation. Wasser has offered no credible evidence that the bridges owned by the New York Department of Transportation ("NYDOT") were physically damaged. Its claim appears to be an attempt to recover damages for costs it incurred by curing the contract it breached with R & D, not for damage to the bridges themselves. The scant evidence of property damage presented by Wasser consisted of its former president's self-serving testimony, which was irrelevant to the physical condition of the bridges, and the testimony of Ralph Romano, the project manager for R & D. Romano testified that structural steel has a "profile"—a microscopic series of dips and valleys, and that the additional sandblasting required to remove the mislabeled primer caused a deeper profile in the steel, which created the need for more paint to cover the bridges. However, Romano admitted that a deeper steel profile actually makes paints adhere to the surface more efficiently. He also admitted that the only costs to R & D were those incurred in re-sandblasting and repainting the bridges in order to meet the specifications of its contract with NYDOT. Finally, Romano testified that R & D did not have to repair the bridges structurally, and that NYDOT did not attempt to bill R & D for a diminution of the bridges' value or for any loss of use of the bridges. Judge Coughenour based his summary judgment order largely on Romano's testimony, finding that the bridges, painted with the wrong primer, would suffer from diminished durability, and that the additional sandblasting required to remove the primer caused some deterioration to the steel of the bridge.

Judge Tanner conducted a two-day trial, during which he heard evidence concerning the physical condition of the bridges

and became convinced that Judge Coughenour had erred in granting summary judgment on the property damage issue. Judge Tanner was persuaded by NYDOT's failure to make any claim for damage to the bridges, and by the testimony of Douglas Townsend, NYDOT's Chief Inspector for the bridges at issue in this case. Townsend testified that neither the application of the mislabeled primer nor the sandblasting required to remove it caused physical injury to the bridges. He stated that the mislabeled primer was in fact a highly effective coating for the bridges, but that even though the mislabeled primer had "redeeming qualities" as a bridge coating, it was not within his discretion to allow it to remain on the bridges. The contract required a specific paint, so NYDOT demanded that R & D apply the specified paint. On the basis of this evidence, Judge Tanner reversed Judge Coughenour's order and issued declaratory judgment in favor of Hartford, holding that the bridges did not suffer property damage as defined by the insurance policy and Washington law.

Our review of the evidence regarding the physical condition of the bridges compels the conclusion that Judge Coughenour's grant of partial summary judgment was clearly erroneous, and that Judge Tanner did not abuse his discretion in setting aside the order. Wasser has failed to prove that the bridges were physically damaged in any tangible way. Romano offered the testimony most helpful to Wasser's claim, but his vague assertions that the extra sandblasting would change the steel's profile are not persuasive. They are not supported by any scientific evidence, and are contradicted by the fact that NYDOT made no claims for damage to or loss of use of the bridges, and by the testimony of Townsend, who asserted that the bridges were not physically harmed.

## II.

■ Wasser cannot prove the required elements of a bad faith claim or a claim under Washington's Consumer Protection Act ("CPA"), RCW 48.30.010. There are two elements to a bad faith claim under Washington law: "An insured is required to show the breach was unreasonable, frivolous, or unfounded," see *Kirk v. Mt. Airy Ins. Co.*, 134 Wash.2d 558, 951 P.2d 1124, 1126 (1998), and that "it was harmed by the insurer's bad faith acts." *Coventry Assocs. v. Am. States Ins. Co.*, 136 Wash.2d 269, 961 P.2d 933, 935 (1998). In order to establish a claim under the CPA, an insured must show that the insurer engaged in a deceptive or unfair practice and that the practice caused injury to the insured. *Starczewski v. Unigard Ins. Group*, 61 Wash.App. 267, 810 P.2d 58, 61 (1991).

The record shows that Hartford did not act in bad faith. It conducted a relatively thorough, albeit brief, investigation of Wasser's claim before correctly denying it. Wasser cannot prove that Hartford's actions were unreasonable, frivolous, or unfounded. It has likewise failed to prove that Hartford engaged in any deceptive or unfair practice. The district court did not commit clear error in finding that Hartford met its obligations under Washington law to investigate the facts and timely notify Wasser of its decision.

## III.

Wasser has failed to prove that Hartford is liable to indemnify it for any portion of the R & D settlement. Therefore, attorney fees and costs are inappropriate. *See Findlay v. United Pacific Ins. Co.*, 129 Wash.2d 368, 917 P.2d 116, 122 (1996) (holding that "an insured who is compelled to assume the burden of legal action to obtain the benefit of its insurance contract

is entitled to attorney fees" only when the insured prevails in that action).

AFFIRMED.