541 F.2d 1317
 ITHACA CORPORATION, Appellant,
v.
HOUSING AUTHORITY OF the COUNTY OF BURLEIGH, NORTH DAKOTA, Appellee.
ITHACA CORPORATION, Appellee,
v.
HOUSING AUTHORITY OF the COUNTY OF BURLEIGH, NORTH DAKOTA, Appellant.
 Nos. 76-1002, 76-1074.
 United States Court of Appeals, Eighth Circuit.
 Submitted May 13, 1976.
Decided Sept. 24, 1976.
 
 Philip L. Bruner, St. Paul, Minn., for appellant.
 Dean F. Bard, Bismarck, N. D., for appellee.
 Before HEANEY and HENLEY, Circuit Judges, and SCHATZ, District Judge.*
 HENLEY, Circuit Judge.
 
 
 1
 This is an action for breach of contract brought in the district court by plaintiff, Ithaca Corporation, a Minnesota corporation having its principal place of business in that State, against the Housing Authority of Burleigh County, North Dakota, a public corporation organized under North Dakota law and operating in the City of Bismarck. The amount in controversy is substantially in excess of $10,000.00 exclusive of interest and costs. Subject matter jurisdiction of the district court was properly based on 28 U.S.C. § 1332(a).
 
 
 2
 The complaint was filed in late 1973. The defendant answered and denied liability and also filed a counterclaim which was later amended. In September, 1975 the case was tried to the district court (The Honorable Bruce M. Van Sickle, United States District Judge) without a jury, and was submitted on the pleadings, oral testimony and documentary exhibits. In November, 1975 the district court filed a Memorandum and Order incorporating its Findings of Fact and Conclusions of Law. Formal judgment was entered November 15, 1975.
 
 
 3
 The controversy rises from the fact that in 1971 the parties entered into a written contract on a form prescribed by the federal Department of Housing and Urban Development (HUD), under the terms of which the plaintiff agreed to construct at its own expense two hundred fifty low rent housing units on land in Bismarck owned or to be acquired by the plaintiff, and to sell the units and the lands on which they stood to the defendant for a total price in excess of $4,000,000.00
 
 
 4
 The contract contemplated that the units were to be completed and conveyed to the defendant in seven phases or installments between January and August, 1972. As each phase was completed, the units included therein were to be conveyed to and accepted by the defendant, and plaintiff was to be paid the contract price for those units, subject to "punchlist" adjustments and subject to certain retainages, including a 71/2% Retainage designed to protect the defendant from claims secured by mechanics' liens on the properties. As each phase of the contract was settled, the parties executed a "Release and Hold Harmless Agreement" as contemplated by the underlying contract.
 
 
 5
 Plaintiff constructed the units and conveyed them to the defendant between January 1, 1972 and August 23 of that year. The first phase of the contract was settled on January 21, and the last phase was settled on August 23. In each instance plaintiff was paid the contract price for the units, less "punchlist" items and less the 71/2% Mechanics' lien retainage that has been mentioned.
 
 
 6
 In the course of their dealings during the contract period plaintiff was represented by its president, Donald A. Wright, and the defendant was represented by its executive director, Eugene Sandwick. Mr. Wright and Mr. Sandwick were present at each closing, and at each closing both sides were represented by counsel.
 
 
 7
 Article VI of the contract provided that the 71/2% Mechanics' lien retainage would be held by the defendant and invested in interest bearing government securities; if no liens were filed within the ninety day period provided by North Dakota law for the filing of such liens, it was the duty of the defendant to pay over to the plaintiff the amount of the retainage plus interest that had accrued thereon.
 
 
 8
 The plaintiff apparently had no serious mechanics' lien problems, and the moneys withheld from the first six of the seven installments were in due course paid over to the plaintiff. And the retainage from the seventh settlement would in all probability have been paid over in late November or early December, 1972, had a dispute not arisen between the parties about the alleged obligation of the plaintiff to pay a pro rata part of the 1972 real estate taxes on the tracts of land conveyed to the defendant, which taxes did not become due and payable until 1973. N.D.C.C. § 57-20-01.
 
 
 9
 Section 57-02-41, N.D.C.C., provides that as between vendor and purchaser real estate taxes become a lien on real estate on and after the first day of January following the year for which such taxes are levied. As it was written in 1972, that section also provided that where a tract of land is acquired during a given tax year by a tax exempt institution or entity, such as a public housing authority, "the property shall be liable for taxes during the portion of the year for which it has been assessed computed to the nearest month such property was not used (for a tax exempt purpose)." And it was further provided that the taxes so computed "shall attach as a lien on such property and the purchaser shall take the property subject to such lien."
 
 
 10
 Article VIII(a) of the contract between the parties provided, among other things, that, "water rent, operating charges and current taxes and assessments are to be adjusted to the date of settlement."[1]
 
 
 11
 As each phase of the contract was scheduled for settlement, Mr. Wright would contact the local tax collector, would ascertain what taxes and assessments were then due and payable,[2] and would pay the same taking a receipt or receipts for the payment. He would take such receipt or receipts with him to the closing and would deliver it or them to a representative of the defendant. No funds were impounded or withheld to cover any prorated part of the 1972 taxes which would become payable in 1973.
 
 
 12
 Shortly before the date of the final closing on August 23, 1972 Mr. Sandwick became aware of the fact that the local taxing authorities would or might contend that the properties sold to the defendant would be subject to real estate taxation with respect to the portions of 1972 which antedated the defendant's acquisition of the respective properties. Mr. Sandwick and Mr. Wright had an informal conversation about the matter, and Wright seems to have taken the position that plaintiff was not liable for any part of the 1972 taxes which would not become due and payable until 1973. The defendant did not pursue the matter, and the final closing was carried out as had been the earlier ones.
 
 
 13
 In October, 1972 the Burleigh County Auditor wrote a letter to Mr. Sandwick in which the position was taken that the plaintiff was liable for prorated 1972 taxes, and the defendant was requested to withhold from any sums due plaintiff approximately $23,000.00 to satisfy the local tax claims.
 
 
 14
 The request was honored, and the sum just mentioned was withheld when final disbursement was made to the plaintiff. The withheld funds were kept and are still being held in a special fund, represented by government securities which are drawing interest. At the time of trial, the amount in the fund was somewhat in excess of $25,000.00
 
 
 15
 Pursuant to a contract between the defendant and the City of Bismarck, executed in 1970, the defendant is required each year to make payments to the City and County in lieu of taxes which in lieu payments are measured by 10% Of the rents collected by the defendant from housing units owned by it. The record reflects that in 1973 the defendant made a payment in lieu of taxes for which the lands in question would have been liable had they remained in private ownership, and that in lieu payments have been made for years subsequent to 1972. But, there is nothing in the record to indicate that the defendant has ever paid or tendered to the local authorities the moneys that defendant withheld from plaintiff or any of defendant's own funds to satisfy the pro rata tax liability that the local authorities were asserting.
 
 
 16
 Plaintiff objected to the withholding of its money, and filed this suit to recover it. The complaint was in two counts. In the first count it was alleged that the withholding of the funds in question amounted to a breach of contract. In the second count it was alleged that the defendant was under a duty to seek from the local taxing authorities an abatement of the 1972 taxes on all of the properties and for the entire year, and that the defendant breached that alleged duty.
 
 
 17
 The defendant answered and denied liability. The defendant did not specifically plead the alleged pro rata tax liability of plaintiff as a defense to plaintiff's action. Instead, the defendant filed a counterclaim alleging that plaintiff was liable to it for the amount of the taxes in question plus interest and penalty and prayed for judgment accordingly. Plaintiff filed a reply denying liability on the counterclaim.
 
 
 18
 The controversy about the taxes is the principal issue in the case. There is, however, a minor issue which was injected into the litigation when the defendant amended its counterclaim. The contract obligated plaintiff at the time of each closing to supply the defendant with current abstracts of title; and plaintiff was also required to pay the costs of bringing the abstracts down to date. Those costs were never paid by the plaintiff, and by the amendment to the counterclaim the defendant sought to recover them as well as the taxes in question. Plaintiff denied that it is liable for the abstract charges and asserts that the defendant waived its right to recover them. The charges amount to about $1700.00.
 
 
 19
 Getting back to the matter of taxes, plaintiff contends primarily that the 1972 taxes were not "current" in that year, and that plaintiff was under no duty to prorate; alternatively, plaintiff contends that the defendant waived tax proration just as the plaintiff contends that defendant waived its right to have plaintiff pay the costs of bringing the abstracts down to date.
 
 
 20
 The district court appears to have been of the view that the defendant had no initial right to withhold from the final disbursement to plaintiff any amount to satisfy the obligation, if any, of plaintiff to pay a pro rata part of the 1972 taxes on the property. On the other hand, the district court found that the plaintiff was required to pay to the defendant a pro rata part of the taxes, and that the requirement had not been waived. As to the abstract charges, the district court found that they had been waived by the defendant.
 
 
 21
 The form of the judgment of the district court was evidently influenced by the way in which the defendant had treated the tax withholding and by the form that the pleadings had taken.
 
 
 22
 As far as the tax controversy was concerned, the district court awarded the plaintiff on its complaint judgment in the sum of $22,243.37, plus interest actually earned on that sum in the amount of $4429.35; the two sums aggregated $26,672.72. The district court awarded the defendant on its counterclaim the principal sum of $19,957.65, plus delinquent tax penalty and interest amounting to $3407.77. Those two sums aggregated $23,365.42. When the two aggregate sums are offset against each other, the result is a balance of $3307.30 in favor of the plaintiff.
 
 
 23
 The counterclaim of the defendant based on the abstract charges was dismissed.
 
 
 24
 In holding that the plaintiff was liable to the defendant for a pro rata part of the 1972 taxes on the property, the district court was of the opinion that plaintiff's obligation ran to the defendant and not to the local taxing authorities. The district court said:
 
 
 25
 While these (tax) liens may not be enforced against the Authority, they would serve to diminish the sale price of any of the properties when and if they were sold by the Authority to private parties. Hence, the Authority, though tax-exempt, is still "aggrieved" by the nonpayment of the 1972 property taxes.
 
 
 26
 We agree. Under North Dakota law if property is sold during a given tax year, and if the parties do not by contract stipulate for a proration of taxes, the State's tax lien attaches as against the purchaser for the full amount of the taxes as of January 1 of the following year, and the purchaser has no recourse against the seller for any part of those taxes. Schneider v. Martin, 136 N.W.2d 153 (N.D.1965). And, as has been seen, the defendant, although tax-exempt, took the properties subject to the State's claim for taxes for the portions of 1972 during which the respective properties were in non-exempt private ownership.
 
 
 27
 If the district court was wrong in its holding that plaintiff was liable to the defendant for the pro rata part of the taxes, then plaintiff is entitled to recover from the defendant the amount withheld. On the other hand, if the district court was correct in its holding, it is of no legal concern to plaintiff whether the defendant ever actually pays the portion of the taxes in question to the City and County.[3]
 
 
 28
 * While the district court found in favor of plaintiff on the first count of the complaint, it rejected plaintiff's theory incorporated in the second count. The court said:
 
 
 29
 Finally, Ithaca urges that, if it should be found liable under the contract for a share of 1972 taxes, the Authority should be held liable to Ithaca for that portion of such taxes which could have been abated but for the Authority's inaction. Ithaca claims that because of its tax-exempt status the Authority could have filed a petition with the commissioners of Burleigh County seeking an abatement of any 1972 property taxes. In view of N.D.C.C. § 57-02-41 (1972), however, I see no merit in this argument. The statute then provided that property transferred to a tax-exempt entity was still subject to taxation for that portion of the year it was in the hands of a taxable entity. The prorated taxes attached as a lien on the property, and the tax-exempt entity took the property subject to the lien. Consequently, it would have been futile for the Authority to seek an abatement of property taxes for that portion of 1972 before the respective parcels were conveyed to it.
 
 We agree with the district court.II
 
 30
 Turning now to the first count of the complaint and to that portion of the counterclaim which relates to the alleged tax obligation of the plaintiff, two questions are presented: (1) Was the plaintiff obligated initially under the contract to pay a pro rata part of the 1972 taxes on the properties which taxes did not fall due until 1973? (2) If so, did the defendant effectively waive the obligation?
 
 
 31
 The district court answered the first of those questions in the affirmative and the second in the negative. We are satisfied that those answers were correct.
 
 
 32
 The first question involves the interpretation of that portion of Article VIII(a) of the contract which provided that "current taxes and assessments" were to be adjusted to the dates of the respective settlements.
 
 
 33
 The North Dakota Legislature has laid down comprehensive rules to be applied in the interpretation of contracts. N.D.C.C. §§ 9-07-01 et seq. It appears to us that the statutory rules reflect generally accepted basic common law rules on the subject, including the rule that contracts are to be interpreted so as to carry out the intent of the parties to the extent that it can be ascertained and lawfully effected. And generally the intention of the parties is to be determined from the language of the contract if that language is clear and explicit and does not involve an absurdity.
 
 
 34
 The rule that contracts are to be interpreted according to the plain meaning of the language used therein is expressed in § 9-07-02. The district court thought that the section just mentioned was controlling in determining the meaning of "current taxes and assessments," and that the term could adequately be defined by reference to a dictionary definition of the word "current."
 
 
 35
 We do not accept that particular approach. It appears to us that in a state like North Dakota in which taxes levied with respect to one calendar year are payable in the following calendar year, the term in question may mean one thing to one person and something else to another, and that it may mean one thing in one context and another thing in another context. For example, if a prospective purchaser of North Dakota land asks a prospective seller in July, 1972 whether "current taxes" have been paid, he obviously is referring to the 1971 taxes which became payable in 1972. But, if the prospective purchaser tells a prospective seller that the latter will be expected to pay a pro rata part of the "current taxes" on the land to be conveyed, and if the prospective seller agrees to the proration, the parties are plainly referring to the 1972 taxes which would become payable in 1973.
 
 
 36
 We think that the use in Article VIII(a) of the contract of the term "current taxes and assessments" was unfortunate, and that it would have been better had the contract provided that taxes "for 1972" or for "the current year" would be prorated.[4] It is clear to us, however, that the parties intended for the 1972 taxes to be prorated, and that the contract should be construed so as to carry out that intention. To hold that the term "current taxes and assessments," as used in the contract did not include 1972 taxes would make the adjustment or proration requirement of Article VIII(a) completely meaningless since there was no question of any proration or adjustment of the 1971 taxes; the plaintiff was obligated to pay all of those taxes and did pay them.
 
 
 37
 As to the alleged waiver of the plaintiff's tax obligation, we have seen that all of the closings were completed without any specific provision for tax proration being made. The retainage with respect to the final closing was somewhat in excess of $140,000.00. On October 4, 1972 the County Auditor wrote Mr. Sandwick setting out the local tax claim and requesting that the sum of $22,243.37 be withheld from any funds that were due to plaintiff from the defendant. On November 10, 1972 Mr. Sandwick wrote to Mr. Wright. Sandwick stated that he considered the tax claim of the County and City to be "tenable," and that he anticipated that if plaintiff did not settle the matter, the local authorities would proceed against the defendant in which case the defendant would invoke against plaintiff Section 5 of the Release and Hold Harmless Agreements and any other relevant contractual provisions. The letter mentioned the amount of the retainage on hand, and stated that if authorized to do so by plaintiff, the defendant would remit the amount of the tax claim to the taxing authorities with the disbursement to be made out of the mechanics' lien retainage. It is needless to say that no such authorization was forthcoming, and the sum of $22,243.37 was withheld by the defendant in the manner that has been described when final disbursement to plaintiff was made.
 
 
 38
 In North Dakota, as elsewhere, waiver is considered to be the voluntary and intentional relinquishment or abandonment of a known right. Brunsdale v. Bagge, 224 N.W.2d 384, 387 (N.D.1974); Gajewski v. Bratcher,221 N.W.2d 614, 628 (N.D.1974); Pollock v. McKenzie County Public School District No. 1, 221 N.W.2d 521, 526-27 (N.D.1974); Gipson v. First National Bank of Bismarck, 97 N.W.2d 671, 675 (N.D.1959).
 
 
 39
 In dealing with the question of waiver, the district court first found that the defendant did not waive its tax claim simply because of the fact that it had joined in the execution of the Release and Hold Harmless Agreements. In that connection the district court referred to Section 5 of the Agreements which is as follows:
 
 
 40
 SEC. 5. Seller further agrees, warrants and promises that it will save and hold Purchaser harmless from and defend against any and all unpaid or unsatisfied claims and causes of action due or owing to anyone on or prior to the date of this Agreement, including but not limited to any and all claims, liabilities, losses, damages, liens, causes of action, expenses and compensation which may arise out of Seller's development, construction and sale of (housing units).
 
 
 41
 We agree with the district court that the documents in question were not accords and satisfactions, and that the execution of one of them by the parties did not relieve the plaintiff of existing obligations with respect to the properties covered by and described in the agreement. Moreover, it appears to us that the agreements were intended to deal primarily with matters connected with the physical construction of the housing units, and that they had little, if anything, to do with peripheral contractual obligations such as an obligation to pay prorated taxes or abstract charges.
 
 
 42
 The district court also found that the conduct of the defendant in the course of the closings and thereafter did not amount to a voluntary and intentional waiver of the tax obligation of the plaintiff. That finding has substantial evidentiary support in the record and is not clearly erroneous.
 
 
 43
 As the district court construed it, and as we construe it, the contract required the plaintiff to pay to the defendant prorated taxes for 1972 with the amount to be calculated by reference to the dates of the respective closings. But the contract did not require the plaintiff to make the payment at any particular time. Actually, payments by either plaintiff or defendant could not have been made to the taxing authorities as the closings proceeded because the 1972 tax books of Burleigh County were not open while the closings were going on.
 
 
 44
 Nor did the contract require the plaintiff to give any security that its obligation with respect to 1972 taxes would be discharged. Specifically, the contract did not provide for any funds to be retained by the defendant for the satisfaction of plaintiff's liability in this respect.
 
 
 45
 At the outset the defendant had a right to assume that the plaintiff would perform the obligation in question, and the defendant was not required to put that assumption to one side merely because shortly prior to the final closing it learned that Mr. Wright, acting for plaintiff, was taking the position that the latter had no obligation with respect to 1972 taxes. Indeed, had the plaintiff in connection with any closing, including the last one, undertaken to secure ultimate payment of the tax liability by withholding funds in addition to the 71/2% Mechanics' lien retainage, it would probably have been met by a complaint by plaintiff that such additional withholding was in violation of the contract even if the plaintiff was ultimately liable for the amount of the prorated taxes.
 
 
 46
 Assuming, and the assumption is possibly valid, that in connection with the closings the representatives of the defendant were so concerned with other matters that they overlooked the particular tax obligation with which we are concerned, and even if it be assumed further that the oversight was negligent, it does not follow that the defendant intentionally waived its right to have the prorated taxes paid by the plaintiff.
 
 
 47
 While we hold that the district court correctly charged the plaintiff with the amount of the prorated 1972 taxes, we think that the district court erred in charging the plaintiff with tax delinquency penalties and with interest on the taxes down to November 5, 1975.
 
 
 48
 As earlier stated, the defendant acquired the properties subject to the State's lien for taxes for the portions of 1972 during which the properties were owned by plaintiff or by other private parties. Thus, as far as the County and City are concerned, the obligation to pay the prorated taxes is on the defendant and not on the plaintiff. Even if that obligation is not enforceable at the moment, it has existed ever since January 1, 1973. The obligation of the plaintiff to pay the amount of the prorated taxes ran to the defendant and not to the local taxing authorities.
 
 
 49
 Had the defendant shortly after January 1, 1973 paid the taxes, either with its own funds or with funds withheld from the plaintiff, there would have been no penalties or interest charges. If the defendant had paid the taxes with its own money, it would have been entitled to interest at the legal rate to compensate it for the loss of use of its money.
 
 
 50
 In point of fact, the defendant has never paid the prorated taxes out of either its own funds or the funds withheld from the plaintiff. And this nonpayment by the defendant has been the cause of the imposition of the penalties and the accrual of interest on the unpaid taxes. We see no legal basis for charging plaintiff with the penalties and interest.
 
 III
 
 51
 We reverse the holding of the district court denying the defendant recovery with respect to the abstract charges. We consider the court's finding that defendant had waived those charges to have been clearly erroneous.
 
 
 52
 The obligation of the plaintiff to pay the charges in question was clear and unambiguous. Mr. Wright was aware of the obligation, and, in fact, when at a fairly early stage in the performance of the contract he was presented with a bill for certain abstract services, he caused it to be paid without question.
 
 
 53
 The district court's finding of waiver was based on nothing but the fact that the defendant did not insist on the charges being paid as the contract was phased out and its further failure to assert its claim until it filed its amended counterclaim nearly two years after the suit was filed.
 
 
 54
 The nonaction of the defendant with respect to the abstract charges was nothing more than an oversight, which did not prejudice the plaintiff and which did not manifest an intention on the part of the defendant to waive the charges.
 
 
 55
 In view of what has been said, we affirm the district court in its rulings on plaintiff's complaint. We also affirm that part of the district court's rulings on the counterclaim which charged plaintiff with the prorated taxes for 1972; we reverse the holding that plaintiff was liable for tax delinquency penalties and interest on the taxes, and the holding that defendant was not entitled to recover the abstract charges. The abstract charges must be added to the counterclaim award; the allowance for penalties and interest must be deleted from that award.
 
 
 56
 The result here reached requires a remand of the case so that the district court may revise its judgment as far as the counterclaim is concerned. The revision will result in a new balance between the parties, and the party in whose favor the balance lies may collect it by appropriate means. Each side will bear its own costs.
 
 
 57
 Affirmed in part, reversed in part, and remanded for further proceedings not inconsistent with this opinion.
 
 
 
 *
 ALBERT G. SCHATZ, District Judge, District of Nebraska, sitting by designation
 
 
 [1]
 With the exception of a minor difference in punctuation, the sentence just quoted is a verbatim copy of the first sentence appearing in Article VII(d) of the model contract prepared by HUD and disseminated by that agency to local housing authorities and real estate developers. A footnote to the model contract permitted limited changes in verbiage and stated that the conditions of contracts should conform as nearly as practicable to local custom and practice in such matters as "proration of taxes, assessments, and other costs included in settlement." More significant changes had to be approved by the "Assistant Secretary for Housing and Mortgage Credit-FHA Commissioner."
 
 
 [2]
 Those taxes and assessments would have been those levied for calendar year 1971 which were payable in 1972
 
 
 [3]
 Should such payment be made, well and good. Should it not be made, and should a dispute develop between the defendant and the local taxing authorities, the result may simply be another lawsuit with respect to which the federal courts probably would have no jurisdiction
 
 
 [4]
 The substitution of such language for the language appearing in Article VII(c) of the model contract would have been permissible. In the course of his cross-examination Mr. Sandwick was asked why such a substitution was not made. He replied ". . . we goofed."