597 F.2d 1148
 AMERICAN FAMILY INSURANCE COMPANY, Appellee,
v.
Vaughn M. DEWALD and Robin R. Dewald, Delano Paczkowski and
Candice Paczkowski, personally and as personal
representatives of the Estate of Renee
Paczkowski, Appellants.
AMERICAN FAMILY INSURANCE COMPANY, Appellee,
v.
Vaughn M. DEWALD and Robin R. Dewald, Delano Paczkowski and
Candice Paczkowski, personally and as personal
representatives of the Estate of Renee
Paczkowski, Appellants.
 Nos. 78-1858, 78-1880.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 20, 1979.
Decided May 2, 1979.
 
 James R. Jungroth (on brief), Mackenzie & Jungroth, Jamestown, N. D., for appellants.
 Russell G. Nerison (on brief), Hjellum, Weiss, Nerison, Jukkala & Vinje, Jamestown, N. D., for appellee.
 Before STEPHENSON and HENLEY, Circuit Judges, and MEREDITH, Chief District Judge.*
 HENLEY, Circuit Judge.
 
 
 1
 This case arises from the tragic death of nine-month old Renee Paczkowski, the daughter of appellants Delano and Candice Paczkowski. Renee died as a result of being scalded in a bathtub in the home of appellants Vaughn and Robin Dewald. At the time of her fatal injury, Renee was being cared for by Mrs. Dewald under a babysitting arrangement with the Paczkowskis. The Paczkowskis filed suit in North Dakota state court against Robin Dewald for wrongful death and, as the personal representatives of Renee's estate, for personal injury. Thereafter, American Family Life Insurance Company (American Family) filed this declaratory judgment action in federal court and named the Dewalds and Paczkowskis as defendants. The action sought a declaration of American Family's rights and liabilities in relation to Renee's death under the provisions of a homeowner's insurance policy that it had issued to the Dewalds. After a bench trial, the district court[1] held that Mrs. Dewald's babysitting activity was not covered by the policy. From this order, the Dewalds and Paczkowskis filed this timely appeal. We affirm.
 
 
 2
 The facts pertinent to this appeal may be briefly stated as follows. At the time of Renee's fatal injury on May 13, 1977, American Family had in force a homeowner's insurance policy taken out by Mr. Dewald.[2] Under Section II of the policy, Mr. Dewald was provided comprehensive personal liability coverage for bodily injury and property damage for up to $100,000 for each occurrence. The policy's liability coverage language provided:
 
 
 3
 The company shall pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an occurrence. The company shall have the right and duty, at its own expense, to defend with counsel of its choice any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, but may make such investigation and settlement of any claim or suit as it deems expedient.
 
 
 4
 The policy also contained a number of exclusions to this general liability language. The exclusion at issue in this case provided:
 
 This section (section II) does not apply:
 
 5
 a. to any business pursuits of an insured, except activities therein which are ordinarily incident to non-business pursuits, . . ..
 
 
 6
 At trial, American Family took the position that the "business pursuits" exclusion applied to Mrs. Dewald's babysitting. In support of its argument, American Family called as a witness David Glaspell, who was the American Family agent who wrote the Dewald's homeowner's policy.[3] Glaspell testified that while he was discussing the homeowner's policy with the Dewalds, he learned that Mrs. Dewald did some babysitting. He informed the Dewalds that the homeowner's policy, as written, would not cover injuries to children being cared for by Mrs. Dewald. He offered to include in the policy a child care provision which would cover such injuries and which would cost an additional ten or twelve dollars a year in premiums. The Dewalds declined to accept this additional coverage because they believed that any injury would be minor and could be dealt with informally. Glaspell further testified that shortly after Renee's fatal accident, Mrs. Dewald called him and said, "I don't think you can help, us," or words to that effect.
 
 
 7
 Robin Dewald testified that she had cared for Renee and another child of the Paczkowskis since September, 1976. She testified that she was paid a dollar an hour for babysitting, but that her primary motivation for babysitting was her love of children. She said that the babysitting arrangement with the Paczkowskis was informal and that the hours she cared for the Paczkowski children varied considerably from week to week.
 
 
 8
 Neither Robin Dewald nor her husband contradicted Glaspell's testimony about their discussion of the policy's coverage of babysitting-related injuries; instead, both testified that they could not recall the details of their discussion with Glaspell.
 
 
 9
 In a memorandum opinion, the district court gave two alternative reasons for holding that Mrs. Dewald's babysitting was a "business pursuit." First, the court held that the language of the exclusion was clear and unambiguous and that because Mrs. Dewald babysat for compensation on a reasonably continuous basis she was engaged in a business pursuit. Furthermore, the court held that the activity giving rise to the fatal injury I. e., bathing Renee, was not "ordinarily incident to non-business pursuits." Second, assuming that the "business pursuits" exclusion was ambiguous, the court stated that North Dakota law requires a court to interpret the terms of a contract so as to give effect to the reasonable expectations of the parties to the contract. Applying this so-called Doctrine of Reasonable Expectations, the court found that Glaspell's discussion with the Dewalds clearly apprised them that babysitting-related injuries were not covered and thus they could not have reasonably expected that the insurance policy would cover Renee's injury.
 
 
 10
 On this appeal, appellants challenge both of the district court's rationales and also contend that the court erred in denying them attorney's fees.
 
 
 11
 In view of the district court's alternative holdings and our discussion below, we pretermit discussion of the court's first holding that the plain language of the "business pursuits" exclusion covers Mrs. Dewald's babysitting activities. We do so mindful of the fact that the state courts have taken somewhat different positions as to what activities are "business pursuits," See Annot., 48 A.L.R.3d 1096 (1973), and that our research has not disclosed an authoritative decision by North Dakota courts on the question.
 
 
 12
 The district court's second alternative holding is based on findings of fact that are not clearly erroneous and is in accordance with well-established principles of North Dakota law. The court credited the definite testimony of Glaspell, who is no longer in the insurance business and thus had no apparent stake in the outcome of this case, rather than the vague and uncertain testimony of the Dewalds. Accepting Glaspell's version as true, it is clear that at the time the contract was formed the parties understood that the policy as written would not cover injuries to children being cared for by Mrs. Dewald. The offer of additional coverage at a modest cost was rejected by the Dewalds. This conscious and fully informed decision to forego the additional coverage is clearly substantial evidence to support a finding that the parties did not intend nor expect that the policy would cover the circumstances leading to Renee's death. Under North Dakota law, if contractual provisions are ambiguous, they must be interpreted so as to give effect to the mutual intention of the parties so far as that intention is ascertainable and lawful. 1 N.D.Cent.Code § 9-07-03 (1975 Repl.); Ithaca Corp. v. Housing Authority of the County of Burleigh, 541 F.2d 1317, 1322 (8th Cir. 1976); Metcalf v. Security Intern. Ins. Co., 261 N.W.2d 795, 799 (N.D.1977). Here, the mutual intention of the parties is clear.
 
 
 13
 Appellants argue that any ambiguity in an insurance contract is to be construed most strongly against the insurer. This principle is codified in § 9-07-19 of the North Dakota Century Code, which provides in part:
 
 
 14
 In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. (Emphasis added.)
 
 
 15
 In this case, any uncertainty as to the meaning of the "business pursuits" exclusion was removed by ascertaining the parties' mutual intention, and thus the above-quoted principle of contract interpretation does not come into play.
 
 
 16
 We thus conclude that the district court correctly found that the parties' mutual understanding was that the insurance policy would not cover injuries to children being cared for by Mrs. Dewald and that the arguably ambiguous business pursuits exclusion should be so interpreted.
 
 
 17
 Appellants' final contention is that they should have been awarded attorney's fees in the district court. Appellants rely on Broyles v. Commercial Union Ins. Co., 287 F.Supp. 942 (W.D.Ark.1968), where the court held that an insured who instituted a successful declaratory judgment action in federal court in an attempt to compel an insurance company to defend the insured was entitled to an award of attorney's fees incurred in the course of the declaratory judgment action. See also National Indem. Co. v. Harper, 295 F.Supp. 749 (W.D.Mo.1969).
 
 
 18
 The Declaratory Judgments Act, 28 U.S.C. § 2201, makes no express provision for an award of attorney's fees. However, the courts in Broyles and Harper held that attorney's fees may be awarded under 28 U.S.C. § 2202 where such an award is authorized by applicable state law for comparable actions. Under North Dakota law, an insurance company which unjustifiably refuses to defend an insured is liable to the insured for reasonable and necessary expenses, including attorney's fees, incurred by the insured in defending actions brought against him. Prince v. Universal Underwriters Ins. Co., 143 N.W.2d 708, 717 (N.D.1966). We assume that this would also extend to cases where an insured has successfully sued to compel an insurance company to assume the defense of an action against the insured.
 
 
 19
 These principles, however, only apply to cases where an insurance company has Wrongfully refused to defend the insured. In this case, the court below found that American Family's policy did not cover the circumstances leading to Renee's death. Thus American Family has not in any way breached its insurance contract with the Dewalds and is not liable for attorney's fees incurred by the Dewalds in the district court.
 
 
 20
 The order of the district court is affirmed.
 
 
 
 *
 The Honorable James H. Meredith, Chief Judge, United States District Court for the Eastern District of Missouri
 
 
 [1]
 The Honorable Paul Benson, Chief Judge, United States District Court for the District of North Dakota
 
 
 [2]
 Vaughn M. Dewald is the only named insured in the homeowner's policy, but Robin Dewald, as a resident in the named insured's household, is provided coverage under the policy unless otherwise excluded
 
 
 [3]
 Glaspell subsequently left the insurance business and, at the time of the trial in this case, was employed by the North Dakota Army National Guard