Maxine GIFT, Personal Representative of the Estate of Charles F. Gift, Plaintiff and Appellee,

v.

Warren EHRICHS and Ehrichs Manufacturing, Inc., a corporation, Defendants and Appellants.

Civ. No. 9620.

Supreme Court of North Dakota.

Oct. 11, 1979.

---

Berg & Juelson, Hillsboro, for plaintiff and appellee; argued by John A. Juelson, Hillsboro.

Vogel, Brantner, Kelly, Knutson, Weir & Bye, Fargo, for defendants and appellants; argued by Jerry O. Brantner, Fargo.

ERICKSTAD, Chief Justice.

This is an appeal from a judgment granted in favor of the plaintiff on a promissory note in the amount of $24,800 plus interest. We affirm.

The facts are undisputed. In 1969, Charles F. Gift [hereinafter referred to as Gift] and the defendant, Warren Ehrichs [hereinafter referred to as Ehrichs] decided to form a corporation known as Ehrichs Manufacturing, Inc., located in Fargo, North Dakota. The corporation's business was the custom manufacturing of metal fabricated products.

Gift and Ehrichs were life-long friends. Prior to 1969, Ehrichs had been engaged in the metal fabricating business as an individual proprietorship, and Gift had been a farmer. When the corporation was formed, Ehrichs contributed his going business, valued at approximately $13,000, and Gift contributed $25,000 cash. Both men were issued 250 shares of stock, and both were directors and officers of the corporation.

Suffice it to say that Ehrichs Manufacturing, Inc., had financial difficulties from its inception. Prior to August 30, 1971, Gift had sold 100 shares of his stock to an accountant for $200, in order to take a tax loss.

By 1971, the business was unable to continue operating without borrowing money. Lending institutions required personal guarantees from both Gift and Ehrichs before they would lend additional money. Gift was unwilling to make such a guarantee, and sought to "excuse" himself from the business venture. To achieve this result, and enable the corporation to continue operation rather than dissolve, Gift and Ehrichs entered into a written stock-sale agreement and promissory note. These documents were prepared by Gift's attorney, and executed on August 30, 1971.

The stock-sale agreement provided for a transfer of Gift's remaining 150 shares of corporate stock to Ehrichs in exchange for Ehrichs' execution of a promissory note in the amount of $24,800 plus interest at the rate of six percent per annum. The principal amount of the note was arrived at by using Gift's original investment in the corporation of $25,000, less the $200 he had realized from the sale of 100 shares.

The promissory note was signed by Ehrichs, and in pertinent part reads:

"FOR VALUE RECEIVED, I promise to pay to the order of CHARLES F. GIFT, payable at Halstad, Minnesota, the sum of Twenty-four Thousand Eight Hundred and no/100's ($24,800.00) Dollars, with interest thereon from August 15, 1971, until fully paid, at the rate of six percent (6%) per annum, payable as follows:

"At the end of each fiscal year of Ehrichs Manufacturing, Inc., hereafter, including the present fiscal year, party of the first part shall pay an installment payment, as hereinafter described, whenever in each of said fiscal years Ehrichs Manufacturing, Inc., has realized sufficient net profits to lawfully declare and pay a dividend to its shareholders, whether or not such dividends are declared, and whenever said corporation is lawfully able to purchase its own shares in accordance with North Dakota Century Code § 10–19–05. The fact that the said corporation may have elected to be taxed by the Internal Revenue Service as a Small Business Corporation pursuant to *Internal Revenue Code, Sections 1371–1379*

shall not affect the determination of whether dividends may or may not be paid. The amount of each of said installment payments shall not be less than an amount equal to twenty percent (20%) of said net profits available to pay dividends, provided, however, that if said twenty percent (20%) exceeds twenty-nine percent (29%) of the principal amount of this promissory note, the second party, at his option, may elect to receive only the amount equal to said twenty-nine percent (29%) or less."

It should be noted that, in drawing up the agreement, there was no discussion about what would happen if Ehrichs Manufacturing never realized sufficient net profits to declare and pay a dividend.

Ehrichs pledged, as security for payment of the note, the 150 shares of stock transferred, which had a face value of $15,000. The promissory note further provided that if the note or any interest thereon became due but had not yet been paid, Gift had the power to sell the 150 shares of stock held as security. The note also contained an arbitration clause in the event the parties disagreed as to whether or not sufficient profits existed to lawfully declare and pay dividends.

In January of 1977, Gift passed away. His wife, Maxine, the plaintiff in this action, was appointed personal representative of his estate.

On May 20, 1977, Maxine Gift, as personal representative, commenced this action against Ehrichs and Ehrichs Manufacturing, Inc., for payment of the promissory note plus interest in the amount of $8,556. Mrs. Gift also sought an accounting to determine if conditions had occurred to render payment of the principle due.

The action was tried in Cass County District Court on November 27, 1978. It was, and still is, Ehrichs' contention that payment of the promissory note was conditioned upon the corporation realizing sufficient net profits to lawfully declare and pay a dividend to its shareholders. These conditions having not occurred, the note was not yet due.

The trial court dismissed the action against Ehrichs Manufacturing, Inc., finding the obligation to be a personal one of Ehrichs. In its conclusions of law, the trial court determined that Ehrichs' obligation on the promissory note was absolute, rather than conditional, and that the time set for making payment was wholly within Ehrichs' control. The court concluded that where the debt is due and the happening of a future event is fixed merely as a convenient time for payment, the law implies a promise to pay within a reasonable time when that future event does not happen as contemplated. The trial court further determined that January 31, 1979, was a reasonable due date.

Judgment was entered on January 31, 1979, and Ehrichs appeals to this court from that judgment.

■ Whether or not the parties intended to make the payment of money conditional must be gathered from the four corners of the instrument and the language used therein, the situation of the parties, the subject matter, and the purposes to be accomplished. Under North Dakota law, the intention of the contracting parties is to be determined from the language of the contract if the language is clear and explicit and does not involve an absurdity. Section 9–07–02, N.D.C.C.; *Ithaca Corp. v. Housing Authority of County of Burleigh, N.D.,* 541 F.2d 1317 (8th Cir. 1976). The intention of the parties to a written contract must, if possible, be ascertained from the writing alone. Section 9–07–04, N.D.C.C.; *Oliver-Mercer Elec. Co-op., Inc. v. Fisher,* 146 N.W.2d 346 (N.D.1966); *Delzer Const. Co. v. New Marian Homes Corp.,* 117 N.W.2d 851 (N.D.1962).

■ The contract must be read, considered, and construed as an entirety, so that all of the provisions of the agreement will be taken into consideration and construed together to ascertain the meaning and effect of the instrument. In other words, the entire instrument, taken by its four corners, must be read and considered to determine the true intent of the parties.

Section 9–07–06, N.D.C.C.; *St. Paul Fire & Marine Ins. Co. v. Amerada Hess Corp.,* 275 N.W.2d 304 (N.D.1979); *Bjerken v. Ames Sand & Gravel Co.,* 189 N.W.2d 366 (N.D. 1971), *appeal after remand,* 206 N.W.2d 884 (N.D.1973).

■ Although we have referred to only a pertinent part of the promissory note at issue, we have carefully considered the entire agreement between these parties, and the situation as shown by the record. The language in the first paragraph of the promissory note contains an express, unqualified, and unconditional promise on the part of Ehrichs to pay Gift "the sum of Twenty-four Thousand Eight Hundred and no/100's ($24,800.00) Dollars, with interest thereon from August 15, 1971, until fully paid, at the rate of six percent (6%) per annum, . . ." From this language, taken together with the entire agreement, it would appear that it was the intent of the parties that Gift would be paid by Ehrichs, and that the obligation to pay was absolute.

This is further bolstered by the testimony of Ehrichs at the trial. Under examination by the court, the following colloquy took place concerning the drafting of the agreement:

"Q. And was there any discussion at that time as to what happens if there wouldn't be any profits?

"A. No.

"Q. Would the debt then be considered to be extinguished along the lines if there was never any profits?

"A. That was never discussed that I can remember.

"Q. Wouldn't that be unusual to have a promissory note with no due date, wouldn't that be a matter for a businessman to discuss, what's the due date on the note?

"A. Well, I guess realizing the value of the stock at the time was less than nothing, hopefully some day there would be some profit and he could get his money back. That is what we both hoped for.

"Q. Wouldn't there be just some business common sense to say there's got to be a due date for this note?

"A. Not under the circumstances, Your Honor.

"Q. Did you expect that this would be in the nature of a gift to you if it never had any profits?

"A. I don't think it's a gift sir."

Ehrichs was then questioned further:

"Q. When do you intend this note will ever be paid?

"A. Just as soon as possible.

"Q. Well, that doesn't answer my question.

"A. It's a matter of where the funds can come from.

"Q. Supposing that you don't have any profit for the next 30 years, it wouldn't be paid then either using the present accounting practices. Well, put it this way, do you feel that the intent of this document here was that Mr. Gift would never be paid or until such—until such time that Hendrickson and Broker said there was some profits to the corporation?

"A. Excuse me?

"Q. Was it the intent when you signed Exhibit 1 for the Plaintiff that there would never be any payment on that note until such time that Broker Hendrickson said there was a taxable income?

"A. No, I don't think that was really intended.

"Q. There was an intention to pay it some time?

"A. As soon as possible."

By this testimony, Ehrichs concedes that it was the intent of the parties that Gift would be paid by Ehrichs. The obligation to pay was absolute. If this was not intended, the note should have expressly said so in unequivocal terms.

The language in the second paragraph of the promissory note merely says when and how payments shall be made. Therefore, we reject Ehrichs' contention that the realization of sufficient net profits in order to declare and pay a dividend to its sharehold-

ers was a condition precedent forever to payment of the note.

■ If the parties intend that a debt shall be absolute, and fix upon a future event merely as a convenient time for payment, the debt will not be contingent. If the future event does not happen as contemplated, the law will require payment to be made within a reasonable time. *Uniroyal, Inc. v. Heller,* 65 F.R.D. 83 (S.D.N.Y. 1974); *Engle v. First National Bank of Chugwater,* 590 P.2d 826 (Wyo.1979); *Rosing v. Dwoskin Decorating Co.,* 141 Ga.App. 617, 234 S.E.2d 128 (1977); *Bledsoe v. Miller,* 496 S.W.2d 140 (Tex.Civ.App.1973); 5 Williston on Contracts § 799 (3rd Ed. 1961); 12 Am.Jur.2d, *Contracts* § 339 (1961).

In the instant case, the facts and circumstances show the debt to be an absolute one. The parties were dealing at arm's length, and the testimony adduced at trial clearly shows that Ehrichs' intended to pay Gift and that no gratuity was involved. The parties obviously intended that the debt should be fixed and absolute, and that the condition concerning payment attached solely to the event of a realization of sufficient net profits to declare and pay a dividend, the happening of which established a convenient time for payment. We believe this agreement was intended to secure for Ehrichs a reasonable time to get the business back on its feet, not to make payment wholly dependent upon the happening of that contingency. *See Sanford v. Luce,* 245 Iowa 74, 60 N.W.2d 885 (1953).

■ In the findings of fact, the trial court found that Ehrichs' obligation was absolute, not subject to extinction, and that the obligation was payable upon the happening of an event wholly within Ehrichs' control. Ehrichs contends that these findings of fact are clearly erroneous under Rule 52(a) of the North Dakota Rules of Civil Procedure. We disagree.

The record indicates that Ehrichs has been the president and manager of the corporation since 1969. Ehrichs Manufacturing is a privately owned corporation, with Ehrichs owning 90% of the stock. The corporation has employed Broeker, Hendrickson & Company of Fargo as its accountant for many years. Through the application of legitimate accounting procedures, including, but not limited to, accelerated depreciation, capital investment credit, business expense deductions, and net operating loss carryover, the corporation has paid no income taxes, and has evidenced a net operating loss for each taxable year. This occurred even while Ehrichs was building equity in the corporation.

Further, Ehrichs Manufacturing has done a substantial amount of business throughout the years, with income from sales in excess of 1.3 million dollars during the fiscal year ending June 30, 1978. In 1978, the corporation had a total stockholders equity of $170,842.15.

The record also indicates that Ehrichs received several fringe benefits in addition to his basic annual salary of $20,000. He received group health insurance benefits, had the use of a company car, and utilized a motor home the corporation had acquired from one of its debtors. Although these corporate assets were generally used for legitimate business purposes, it appears that if Ehrichs sincerely desired to repay the promissory note "as soon as possible," appropriate steps could have been taken to reduce those benefits and thus increase the possibility of profit from which payments on the note could have been made. This is so, particularly in light of the fact that the corporation was able to pay the interest to date on several other notes, namely: short term notes payable to Fargo National Bank; a mortgage note payable for the lease and option to purchase the corporation's building; a note payable to Model Cities; and an annual Federal Land Bank payment.

In light of this evidence as adduced from the record, the findings of the trial court, referred to above, are not clearly erroneous.

Ehrichs also contends that the trial court erred in concluding that the condition in the note was excused due to the designed prevention of the occurrence of the condition by Ehrichs. We need not determine the

validity of this contention because of our view that the debt in this case was absolute, the parties having fixed upon a future event merely as a convenient time for payment. When that future event failed to occur, *i. e.,* the corporation failed to earn sufficient net profits to declare and pay a dividend, the law requires that payment be made within a reasonable time. Whether or not Ehrichs was engaged in a scheme designed to prevent the occurrence of the future event is a question which need not be answered to resolve this case. *See Hospital Services v. Brooks,* 229 N.W.2d 69 (N.D.1975).

The trial court set a due date of January 31, 1979, as a reasonable time for payment of the promissory note. This date was set because "[n]o alternative absolute date is present in the instrument." Ehrichs contends that in setting the due date at January 31, 1979, the court is actually rewriting the contract for the parties. We disagree.

 It is well established that courts will not enforce a contract which is vague, indefinite, and uncertain, nor will they make a new contract for parties. *Drees Farming Ass'n v. Thompson,* 246 N.W.2d 883 (N.D. 1976); *Berry-Iverson Co. of North Dakota v. Johnson,* 242 N.W.2d 126 (N.D.1976). However, it is also well settled that courts do not favor, but will lean against, destruction of contracts because of uncertainty. If feasible, agreements will be construed so as to carry into effect the reasonable intention of the parties, if that can be determined. *Id.*

The agreement between Gift and Ehrichs is not vague, indefinite, or uncertain. The promise to pay is absolute, and the parties merely fixed upon a future event as a convenient time for payment. The fact that they failed to discuss the possibility that the corporation might never earn sufficient net profits to declare and pay a dividend does not render the agreement void and unenforceable. The parties having neglected to provide for such a contingency, the law implies a promise to pay within a reasonable time in order to do justice between the parties. *See* § 9–07–22,

N.D.C.C. We believe that the date set for payment by the trial court is reasonable, and thus conclude that the setting of the date does not, under the circumstances of this case, amount to the court's making a new contract for the parties.

Accordingly, the judgment is affirmed.

VANDE WALLE, PEDERSON, PAULSON and SAND, JJ., concur.