**Robert L. KYLLO, et al., Plaintiffs,**

v.

**NORTHLAND CHEMICAL CO., Defendant, Third-Party Plaintiff and Appellant,**

v.

**DIAMOND ALKALI CORPORATION, a corporation, Third-Party Defendants,**

and

**Insurance Company of North America, Third-Party Defendants and Respondents.**

**Civ. No. 8871.**

Supreme Court of North Dakota.

July 12, 1973.

Garry A. Pearson, Grand Forks, for defendant, third-party plaintiff and appellant, Northland Chemical Co.

Stokes, Vaaler, Gillig, Warcup & Woutat, Grand Forks, for third-party defendants and respondents, Ins. Co. of North America.

PAULSON, Judge.

This is an appeal from a judgment of the Grand Forks County District Court which held that Northland Chemical Company [hereinafter Northland] was not protected by its liability insurance policy from judgments rendered against it for the failure of its products to perform as expected, and that the Insurance Company of North America [hereinafter INA] had no duty to defend Northland in actions brought by customers of Northland who were displeased with the performance of Northland's products.

In May of 1968 the Kyllos, plaintiffs in the primary action, purchased a pre-emergent herbicide known as Dacthal W-75 from the defendant and third-party plaintiff, Northland Chemical Company. The Kyllos relied on the representations of a salesman for Northland that the Dacthal W-75 would control the weeds in their pinto bean fields.

The Kyllos had the Dacthal W-75 applied to their fields by means of aerial spraying, following the directions on the container of Dacthal W-75 for such application and the directions given to them by Northland's salesman. Despite such application of Dacthal W-75, weeds grew in the Kyllos' pinto bean fields, causing decreases in the yields expected by the Kyllos from their fields.

Because of the decreased yields, the Kyllos brought action against Northland to recover the difference between the profits anticipated and the profits actually received. In their complaint, the Kyllos referred to their damage as "property damage" and prayed for damages in the amount of their lost profits.

In this action Northland impleaded its liability insurer, Insurance Company of North America, as third-party defendant, and claimed that INA should indemnify Northland for the amount of any judgments rendered against Northland in the primary action and should defend Northland in the action. INA refused to defend Northland, urging that the allegations contained in the complaint in the primary action were not covered by the insurance policy issued to Northland. The Kyllos recovered judgments in varying amounts from Northland. The district court, pursuant to a judgment dated June 28, 1972, held that INA was under no duty to defend Northland in the action and that the Kyllos' judgments were not covered by the liability insurance policy because such policy did not cover claims for lost profits nor passive malfunction claims.

Northland appeals from the judgment dated June 28, 1972, and charges as error the district court's failure to find that INA breached its contract by refusing to defend Northland; and the district court's failure to find that the Kyllos suffered damage to tangible personal property and that INA was therefore obligated to indemnify Northland.

In this appeal Northland prays for reversal of the judgment below and for remand to the district court for a hearing to determine the costs, disbursements, and attorneys' fees to which it claims to be entitled.

We are first confronted with the issue of whether INA should indemnify Northland for the judgment rendered against Northland and in favor of the Kyllos. That is: were the injuries suffered by the Kyllos covered under the liability policy issued by INA to Northland? We conclude that the Kyllos' judgment was not covered by the policy of insurance.

■ The allegations in the Kyllos' complaint are in the nature of products liability claims, with the loss of anticipated profits being the measure of damages. The insurance policy, however, is intended to indemnify Northland for damages it is legally obligated to pay for physical damage done to a claimant's body or property. This is evidenced by Exclusion (h) of the policy in question, Policy No. LAB 1 81 73, which provides:

"This insurance does not apply:

.    .    .    .    .    .

" (h) to bodily injury or property damage resulting from the failure of the Named Insured's products or work completed by or for the Named Insured to perform the function or serve the purpose intended by the Named Insured, if such failure is due to a mistake or deficiency in any design, formula, plan, specifications, advertising material or printed instructions prepared or developed by

any Insured; but this exclusion does not apply to bodily injury or property damage resulting from the active malfunctioning of such products or work; "

Though the Dacthal W-75 weed spray involved in this case was made for Northland by an out-of-State corporation, the spray still comes within the purview of the definition of "Named Insured's Products" given in the policy:

"Named Insured's Products—'Named Insured's products' means goods or products manufactured, sold, handled or distributed by the Named Insured or by others trading under his name, including any container thereof (other than a vehicle)    .    .    .    ."

The position that the policy covers only physical damage is buttressed by reference to Hartford Accident & Indemnity Co. v. Olson Bros., Inc., 187 Neb. 179, 188 N.W. 2d 699 (1971), wherein the liability policy insured Olson, a roofing contractor, who constructed a defective roof for a customer. In the *Olson Bros.* case, *supra*, the provisions of the policy quoted in that case are identical to the provisions in the policy in the instant case. Though coverage was excluded in *Olson Bros.* on the basis of an exclusion, other than Exclusion (h) previously quoted herein, the court stated in *Olson Bros., supra* 188 N.W.2d at 703: "It is only physical damage which the policy covers." In *Olson Bros.* the roof constructed was defective, but such defect did not damage any other part of the building or injure any person, so there was no coverage. In the instant case the exception to Exclusion (h) is liability for the active malfunctioning of the named insured's products. This means actual physical damage caused by application of the product. There was no such physical damage in the instant case since the Dacthal W-75 did not directly harm the pinto beans. The Dacthal W-75 spray merely failed to work as expected, and that failure is specifically excluded from coverage by Exclusion (h) of the policy.

The conclusion that the liability insurance policy in question does not cover products liability claims, but covers only actual physical damage is supported by a treatise known as Long, The Law of Liability Insurance, Volume 2, Appendix B, at § 13, where it is stated:

"This provision is commonly known as the 'business risk' exclusion. Its purpose is to exclude bodily injury or property damage claims resulting from failure of the insured-manufacturer's products to perform the function or serve the purpose intended by the manufacturer, if such failure arises out of 'a mistake or deficiency in any design, formula, plan, specification, advertising material or printed instructions prepared or developed by any insured.' If the manufacturer distributes a faulty product that will not work properly or at all, he must bear the loss himself.

"The exclusion does not apply if injury or damage results 'from the active malfunctioning of such product or work.' . . . The example of the application of this exclusion most commonly given by committees of the Bureaus has been the manufacturer of a bug killer. If the bug killer, when sprayed on a crop merely fails to kill the bugs, there is no coverage for the destruction of the crop by bugs. But if the bug killer, when sprayed on the crop, caused harm to the crop, the loss would be covered."

We believe this reasoning applies equally to a distributor of products, such as Northland in the instant case, because, as defined in the policy, the named insured's products include those "sold, handled or distributed" by the named insured. Exclusion (h) in the policy in the case at bar excludes products liability claims based on deficient products, and places recourse for the distributor against the manufacturer or other dealer higher in the chain of distribution.

The type of insurance contract which we are considering here was rewritten prior to the accrual of the claim for relief herein in order to eliminate future decisions awarding coverage to insureds for products liability claims based on breach of warranty where no active malfunctioning of the product caused actual physical damage.

Case holdings previous to the rewriting of this type of liability insurance policy reached conclusions contrary to the decision in the instant case. For example, in St. Paul Fire and Marine Insurance Co. v. Northern Grain Co., 365 F.2d 361 (8 Cir. 1966), the insuring clause was substantially the same as that in the instant case, but exclusions such as Exclusion (h) in the case at bar were not present in the *Northern Grain* case. In the *Northern Grain* case, some farmers bought seed wheat from Northern Grain Company, which seed wheat proved to be the wrong type. The result was that the seed wheat purchased was less productive by about seven or eight bushels per acre than the seed wheat the farmers thought they were purchasing. Twenty-five farmers sued Northern Grain Company for the diminution in value of their wheat crop caused by their buying the wrong seed wheat from Northern Grain Company. The court there held that these losses were covered by the liability insurance policy, saying, in 365 F.2d at 366:

"  . . . the cases squarely recognize that consequential damages, including the diminution in value of property, caused by the use or application of a deficient or inferior product, fall within the coverage provisions of an insuring agreement such as that in the case at hand."

For cases to the same effect, see Dakota Block Co. v. Western Casualty & Surety Co., 81 S.D. 213, 132 N.W.2d 826 (1965); and Hauenstein v. Saint Paul-Mercury Indem. Co., 242 Minn. 354, 65 N.W.2d 122 (1954). Therefore, because the insurance policies in the cases holding the insurance company liable did not contain an exclusion similar to Exclusion (h), and because the Dacthal W-75 weed spray in the in-

stant case did not cause any actual physical damage due to an active malfunction of the spray, we hold that the decreased yields suffered by the farmers in the case at bar are not covered by Northland's liability insurance policy.

We are next confronted with the issue of whether INA should have defended the actions brought by the Kyllos against Northland and whether INA is liable for costs, disbursements, and attorneys' fees for failing to so defend.

The general rule on a liability insurer's duty to defend its insured is that "the insurer is under an obligation to defend only if it would be held bound to indemnify the insured in case the injured person prevailed upon the allegations of his complaint". 50 A.L.R.2d 464. This rule was followed and clarified in the case of Blackfield v. Underwriters at Lloyd's, London, 245 Cal.App.2d 271, 53 Cal.Rptr. 838, 840 (1966), where the court, quoting from Eichler Homes, Inc. v. Underwriters at Lloyd's, London, 238 Cal.App.2d 532, 538, 47 Cal.Rptr. 843, 847 (1965), stated:

" 'The insurer's obligation to defend must be measured by the terms of the insurance policy and the pleading of the claimant who sues the insured. . . . If the allegations of the claimant's complaint would support a recovery upon a risk covered by the insurer's policy, then the duty to defend is present.' "

Different phraseology of the same rule may be found in the following cases: Republic Vanguard Insurance Co. v. Buehl, 295 Minn. 327, 204 N.W.2d 426 (1973); Wilson v. Maryland Cas. Co., 377 Pa. 588, 105 A.2d 304 (1954); Lee v. Aetna Casualty & Surety Co., 178 F.2d 750, 751 (2 Cir. 1949); and Pow-Well Plumbing & Heat. v. Merchants Mut. Cas. Co., 195 Misc. 251, 89 N.Y.S.2d 469 (1949).

Generally, where there is doubt as to whether the duty to defend exists, such doubt is resolved in favor of the insured. Pow-Well Plumbing & Heat. v. Merchants

Mut. Cas. Co., *supra*. In Hartford Accident & Indemnity Co. v. Pacific Indemnity Co., 249 Cal.App.2d 432, 57 Cal.Rptr. 492 (1967), there was doubt as to whether the injured party's complaint stated facts sufficient to bring the injury within the coverage of the insurance policy. In resolving the quandary of whether or not the insurance company should defend, the court in the *Hartford Accident* case, *supra* 57 Cal. Rptr. at 494, quoting from Firco, Inc. v. Fireman's Fund Insurance Company, 173 Cal.App.2d 524, 528, 343 P.2d 311, 313 (1959), stated:

" 'We have presented to us, therefore, an action based upon a claim that may or may not be covered by the policy. In such a situation the insurer is obligated to undertake the defense of the action and to continue such defense at least until it appears that the claim is not covered by the policy.' "

To the same effect, see Blackfield v. Underwriters at Lloyd's, London, *supra* 53 Cal.Rptr. at 840, and Lee v. Aetna Casualty & Surety Co., *supra* 178 F.2d at 753.

The Kyllos' complaint in the instant case alleges the failure of Northland's product, Dacthal W-75, to kill weeds, resulting in diminished yields of pinto beans. Even though the Kyllos referred to this as property damage in paragraph X of their complaint, they made no allegation that the weed spray, Dacthal W-75, actively malfunctioned and caused any actual physical damage to their pinto bean plants.

Without a factual allegation in the complaint that alleges actual physical damage to the pinto bean plants, we believe that the Kyllos did not bring their cause of action within the coverage of their liability policy. We compare the allegations of the complaint with the coverage and exclusions of the liability insurance policy. In making this comparison we find that Exclusion (h), quoted previously, specifically excludes coverage for the Kyllos' claimed in-

jury due to the product's failure to perform as expected.

Because our examination of the complaint filed by the injured parties shows no allegation of actual physical damage, we hold that INA was under no duty to defend Northland in the actions brought by the Kyllos. As a result, INA is not liable to Northland for the costs, disbursements, and attorneys' fees expended by Northland in its own defense.

The judgment of the district court is affirmed in all respects.

ERICKSTAD, C. J., and TEIGEN and KNUDSON, JJ., concur.

VOGEL, J., not being a member of this court at the time of submission of this case, did not participate.