**NATIONAL FARMERS UNION PROP-ERTY AND CASUALTY COMPANY and Farmers Union Mutual Insurance Company, Plaintiffs and Appellees,**

v.

**Albert G. KOVASH, Defendant and Appellant.**

**Civ. No. 890242.**

Supreme Court of North Dakota.

March 1, 1990.

Bucklin Trial Lawyers, P.C., Bismarck, for plaintiffs and appellees, argued by Calvin N. Rolfson, Bismarck.

Wefald Law Office, Ltd., Bismarck, for defendant and appellant, argued by Robert O. Wefald, Bismarck.

LEVINE, Justice.

Albert G. Kovash appeals from a judgment declaring that National Farmers Union Property and Casualty Company [National] and Farmers Union Mutual Insurance Company [Mutual], have no duty to defend Kovash in a lawsuit brought by Henry Vannet. Kovash also appeals from an order denying his post-trial motion. We affirm.

Kovash owns and leases real property in Morton County which surrounds a half-section of land owned by Vannet. Vannet's complaint involves two separate claims regarding access to roads on or near section lines adjoining the parties' property.

Count one of the complaint alleges that Kovash, maliciously and without legal justification or excuse, closed a section line to the public by placing on the section line a gate which could not be opened. Vannet sought to compel Kovash to comply with Section 24-06-28, N.D.C.C., prohibiting the obstruction of section lines, and with ch. 24-10, N.D.C.C., regulating the erection of cattle guards on section lines. Vannet also sought to permanently restrain Kovash from closing the section line.

Count two alleges that Kovash, maliciously and without legal justification or excuse, used Vannet's private road. Vannet sought to restrain Kovash from using the private road and also sought nominal and punitive damages and attorney's fees and costs. On March 14, 1989, Vannet amended his complaint to eliminate his claim for damages and to seek only injunctive relief.

On August 17, 1988 National and Mutual [hereinafter collectively referred to as plaintiffs] commenced this declaratory judgment action against Kovash, seeking a determination that they did not have a duty to defend Kovash under any of their four insurance contracts with him.[1] They allege that Vannet's lawsuit is based on Kovash's intentional conduct and is excluded from coverage under the four insurance policies.

At trial, the parties agreed that only a question of law was involved. Relying upon Vannet's amended complaint and the

---

1. National had three insurance policies with Kovash: (1) a farm liability policy; (2) a farmers blanket liability policy; and (3) a personal umbrella policy. Mutual had a farm liability policy with Kovash.

four insurance policies, they did not introduce testimony. The court determined that because Kovash's acts, as alleged in Vannet's amended complaint, were purposeful and intentional, they were excluded from coverage under each of the four insurance policies. The court concluded that the plaintiffs, therefore, did not have a duty to defend Kovash. Kovash moved for a new trial or for relief from the judgment. The trial court denied Kovash's motion, and he has appealed.

Kovash contends that the plaintiffs have a duty to defend him in this case. He asserts that an insurer must investigate and ascertain facts independent of the pleadings before it resolves the question of its duty to defend an insured against allegations of tortious intentional conduct. The insurer, he argues, may not rely exclusively on the insurance policy and allegations of the complaint. Contending that the intentional-acts exclusion requires that both the insured's conduct and the harm resulting from that conduct must have been intended, he argues that if the plaintiffs had investigated this case, they would have determined that he did not intend to cause harm. We reject Kovash's arguments because they disregard established principles of our law.

In *Kyllo v. Northland Chemical Co.*, 209 N.W.2d 629, 634 (N.D.1973), we outlined an insurer's duty to defend:

"The general rule on a liability insurer's duty to defend its insured is that 'the insurer is under an obligation to defend only if it would be held bound to indemnify the insured in case the injured person prevailed upon the allegations of his complaint'. 50 A.L.R.2d 464. This rule was followed and clarified in the case of *Blackfield v. Underwriters at Lloyd's, London*, 245 Cal.App.2d 271, 53 Cal. Rptr. 838, 840 (1966), where the court, quoting from *Eichler Homes, Inc. v. Underwriters at Lloyd's, London*, 238 Cal. App.2d 532, 538, 47 Cal.Rptr. 843, 847 (1965), stated:

" ' "The insurer's obligation to defend must be measured by the terms of the insurance policy and the pleading of the claimant who sues the insured.... If the allegations of the claimant's complaint would support a recovery upon a risk covered by the insurer's policy, then the duty to defend is present." ' "

In *Kyllo, supra*, we said that any doubt about an insurer's duty to defend a third-party complaint against the insured must be resolved in favor of the duty to defend, at least, until it appears that the claim is not covered by the policy. We concluded that the language of the insurance policy specifically excluded coverage for the claimed injury. We held, therefore, that the insurer was not required to defend the insured.

In *Applegren v. Milbank Mutual Insurance Co.*, 268 N.W.2d 114 (N.D.1978), we followed *Kyllo, supra*, and held that the insurance policy and the allegations in a third-party complaint against the insured controlled whether an insurer had a duty to defend. We said that, absent other proceedings, information outside the complaint was not available to the insurer for purposes of determining whether there was a duty to defend. We concluded that the language in the insurance policy clearly covered the allegations in the third-party complaint and that other ambiguous exclusions of coverage did not preclude coverage. We held, therefore, that the insurer was required to defend the insured.

■ Our decisions in *Kyllo, supra*, and *Applegren, supra*, require an insurer to defend actions against an insured if the allegations in the complaint against the insured give rise to potential liability or a possibility of coverage under the language in the insurance policy. *See* 7C Appleman, Insurance Law and Practice (Berdal ed.) § 4682 (1979); 14 Couch on Insurance, 2d (Rev.ed.) § 51:42 (1982). Although Kovash frames the duty-to-defend issue in terms of an obligation to investigate facts independent of the complaint, the proper inquiry under *Applegren* and *Kyllo* is whether the allegations in the complaint give rise to potential liability or a possibility of coverage under the insurance policy.

■ The four policies in this case provide coverage for damages resulting from bodily injury or property damage caused by an occurrence but exclude coverage for bodily injury or property damage intentionally caused by the insured.[2] National's farm

2. National's farm liability policy provides, in relevant part:

"DEFINITIONS

"The following words and phrases used in this policy are defined as follows:

\*    \*    \*    \*    \*    \*

"5. Bodily Injury means physical injury to a person caused by an occurrence. It includes required care, loss of services, and death resulting from such physical injury.

"6. Property Damage means injury to or destruction of tangible property, including the loss of use of such property, caused by an occurrence.

"7. Occurrence under Coverages Q, R, S, T, and U of this policy means an accident, including continuous or repeated exposure to conditions which results in bodily injury or property damage neither expected nor intended by the insured.

\*    \*    \*    \*    \*    \*

"COVERAGE Q—LIABILITY

"We will pay on behalf of an insured for damages resulting from bodily injury or property damage caused by an occurrence, if the insured is legally obligated for such damages. We may make any investigation and settle any claim or suit we decide is appropriate.

\*    \*    \*    \*    \*    \*

"Coverages Q, R, and S do not apply to bodily injury or property damage:

"1. Caused intentionally by or at the direction of an insured.

\*    \*    \*    \*    \*    \*

"COVERAGE U—DAMAGE TO PROPERTY OF OTHERS

"We will pay up to $500 for damage to property of others if the damage is caused by an insured. . . .

"We will not pay for property damage:

\*    \*    \*    \*    \*    \*

"2. Which is caused intentionally by an insured who has attained the age of 13."

National's farmers blanket liability policy provides, in relevant part:

"Coverage A—Farm and Personal Liability: To pay on behalf of the insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage.

\*    \*    \*    \*    \*    \*

"IV. Other Definitions:

" 'Bodily Injury' means bodily injury, sickness or disease, . . . sustained by any person;

" 'Property Damage' means injury to or destruction of property, including loss of use thereof;

\*    \*    \*    \*    \*    \*

"EXCLUSIONS

"This policy does not apply:

\*    \*    \*    \*    \*    \*

"(g) under Coverages A, B–1, B–2, C and D to bodily injury or property damage caused intentionally by or at the direction of the insured."

National's personal umbrella policy provides, in relevant part:

"4. Personal injury means:

"a. bodily injury, sickness, disease, or death;

"b. disability, shock, mental anguish, and mental injury;

"c. false arrest or false imprisonment;

"d. wrongful eviction or wrongful detention;

"e. malicious prosecution or humiliation;

"f. libel, slander, or defamation of character;

"g. invasion of privacy;

"h. assault and battery not committed by or directed by a covered person.

"5. Property damage means physical injury only to tangible property; it includes loss of use of such injured property. (Property damage does not include any injury to intangible property.)

\*    \*    \*    \*    \*    \*

"11. Occurrence means an accident or event, including continuous or repeated exposure to conditions, which results in personal injury or property damage neither expected nor intended from the standpoint of a covered person.

\*    \*    \*    \*    \*    \*

"1. Coverage—Personal Liability.

"We will pay that portion of the damages for personal injury or property damage for which a covered person is legally responsible. Such payment is subject to all the other terms of this policy.

\*    \*    \*    \*    \*    \*

"EXCLUSIONS

"This policy does not apply to:

\*    \*    \*    \*    \*    \*

"4. Personal injury or property damage arising out of:

"a. any act committed by or directed by a covered person with intent to cause such injury or such damage;"

Mutual's farm liability policy provides, in relevant part:

"1. 'Bodily Injury' means physical injury to a person caused by an occurrence. It includes required care, loss of services, and death resulting from such physical injury.

\*    \*    \*    \*    \*    \*

"9. 'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

"a. bodily injury; or

"b. property damage.

"10. 'Property Damage' means physical damage to or destruction of tangible property,

liability policy and its personal umbrella policy define an "occurrence" as "an accident, including continuous or repeated exposure to conditions which results in bodily injury or property damage neither expected nor intended" by the insured.[3]

In our view, the unambiguous language of the four insurance policies does not require the plaintiffs to defend Vannet's action against Kovash because the complaint alleges facts which are excluded from coverage under the intentional acts provision of each policy. The complaint therefore does not allege facts which give rise to potential liability or a possibility of coverage. Vannet does not allege that, as a result of Kovash's conduct, he suffered bodily injury or property damage as defined in the four policies. Vannet seeks injunctive relief and not money damages.[4] The essence of Vannet's claims are the closing of a section line and trespass. A trespass requires intentional conduct [*McDermott v. Sway*, 78 N.D. 521, 50 N.W.2d 235 (1951)], and is thus excluded from coverage under the intentional-acts exclusion of the four insurance policies. Similarly, we believe that it cannot be seriously disputed that Vannet's allegation that Kovash maliciously and without legal justification closed a section line is also excluded from coverage under the intentional-acts exclusion.

■ Kovash nevertheless argues that the intentional-acts exclusion does not preclude a duty to defend in this case because that exclusion requires not only that the insured's acts be intentional, but also that they be for the purpose of causing harm. He asserts that his alleged conduct was not done for the purpose of causing harm.

In *Hins v. Heer*, 259 N.W.2d 38 (N.D. 1977), this court faced a similar argument in construing a clause in an insurance policy which excluded coverage for intentional acts. We held that an insurer did not have a duty to defend an insured who had been found liable for damages for injuries resulting from the insured's willful, wanton, and physical assault upon a third party. We said that "where an intentional act results in injuries which are the natural and probable consequences of the act, the injuries, as well as the act, are intentional." *Hins, supra*, 259 N.W.2d at 40. Our decision in *Hins* thus follows the "classic tort doctrine" for determining an insured's intent for purposes of an exclusion for intentional acts. *See* Annotation, 31 A.L.R.4th 957, 983 § 5 (1982).

including loss of use of this property. Theft or conversion of property by an insured is not considered to be property damage.

\* \* \* \* \* \*

"COVERAGE L—Personal Liability
"If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:
"1. pay up to our limit of liability for the damages for which the insured is legally liable; and

\* \* \* \* \* \*

"ADDITIONAL COVERAGES
"1. Damage to Property of Others:
"We will pay up to $500 for damage to property of others if the damage is caused by an insured. . . .

\* \* \* \* \* \*

"We will not pay for property damage:

\* \* \* \* \* \*

"b. which is caused intentionally by an insured who has attained the age of 13;

\* \* \* \* \* \*

"EXCLUSIONS FOR COVERAGES L & M
"1. COVERAGE L—Personal Liability and COVERAGE M—Medical Payments to Others do not apply to bodily injury or property damage:
"a. which is expected or intended from the standpoint of the insured."

3. A determination of coverage under the "expected or intended" language in the definition of an occurrence generally involves the same determination as coverage under an exclusion for intentional acts. Annotation, 31 A.L.R.4th 957, 971 (1984).

4. The trial court determined that the plaintiffs did not have a duty to defend Kovash because of the intentional-acts exclusion. The trial court's determination was not based on Vannet's request for only injunctive relief and the language of the policies providing coverage for "damages" for bodily injury or property damage. Therefore, we express no opinion on whether the language of an insurance policy providing coverage for damages obligates an insurer to defend an action against an insured for injunctive relief only.

Although *Hins* involved an assault, its rationale has been applied to trespass cases under the "accident" or "occurrence" clause of an insurance policy. *See Thomason v. United States Fidelity & Guaranty Co.*, 248 F.2d 417 (5th Cir.1957); *Foxley & Co. v. United States Fidelity and Guaranty Co.*, 203 Neb. 165, 277 N.W.2d 686 (1979); *Argonaut Southwest Ins. Co. v. Maupin*, 500 S.W.2d 633 (Tex.1973). *See also* 11 Couch on Insurance, 2d (Rev.ed.) § 44:297 (1982). *Hins* is dispositive of Kovash's argument that, under the intentional-acts exclusion, his alleged conduct must have been done for the purpose of causing harm. We conclude that Vannet's claims are based upon allegations of intentional conduct by Kovash and are unambiguously excluded from coverage under the intentional-acts exclusion of the four policies.

Kovash also contends that the plaintiffs are obliged to defend him because of the language in Mutual's farm liability policy and National's farmers blanket liability policy which promises a defense even if the complaint brought against him is "groundless, false or fraudulent." [5]

■ Kovash misconstrues the meaning of the clause. It does not oblige the plaintiffs to defend any groundless, false or fraudulent case against an insured; rather, it requires them to defend only those actions which come within the terms of the insurance policy, even if those actions are groundless, false or fraudulent. *See Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 54 Cal. Rptr. 104, 419 P.2d 168, 175 (1966). In this case Vannet's claim against Kovash is for intentional acts. Intentional acts are specifically excluded from coverage. Whether the claim for intentional acts is also groundless, false or fraudulent has no bearing on the duty to defend.

We conclude that Vannet's amended complaint does not allege facts which give rise to potential liability or a possibility of coverage under the language of the four insurance policies. We therefore agree with the trial court that the plaintiffs do not have a duty to defend Kovash.

Kovash also contends that the trial court erred in deciding this case without hearing testimony of his intent. He argues that he raised this issue in his motion for a new trial or for relief from the judgment, and that the trial court abused its discretion in denying his motion.

As we previously noted, our decision in *Hins v. Heer, supra,* is dispositive of Kovash's argument that his alleged conduct must have been for the purpose of causing harm. We conclude that the trial court did not abuse its discretion in denying Kovash's post-trial motion.

The judgment and the order denying Kovash's post-trial motion are affirmed.

ERICKSTAD, C.J., and VANDE WALLE, GIERKE and MESCHKE, JJ., concur.

---

5. National's farmers blanket liability policy provides:

> "As respects the insurance afforded by the other terms of this policy under Coverages A and C(a), the company shall
>
> "(A) defend any suit against the insured alleging such injury or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient; ..."

Mutual's farm liability policy provides:

> "If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies, we will:
>
>   * * * * * *
>
> "2. provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the occurrence equals our limit of liability."