2005 ND 173

**FARMERS UNION MUTUAL INSURANCE COMPANY, Plaintiff, Appellee and Cross–Appellant**

v.

**Martin DECKER, Donald Decker, Gerald Decker, Jamie Iverson, and Rodney Iverson, Defendants, Appellants and Cross–Appellees.**

No. 20040371.

Supreme Court of North Dakota.

Oct. 18, 2005.

William P. Zuger (argued), Bismarck, N.D., for defendants, appellants and cross-appellees.

Ralph A. Vinje (appeared), Vinje Law Firm, Bismarck, N.D., for defendants, appellants and cross-appellees.

Lawrence R. Klemin (argued) and David D. Schweigert, Bucklin, Klemin & McBride, Bismarck, N.D., for plaintiff, appellee and cross-appellant.

KAPSNER, Justice.

[¶ 1] Martin Decker, Donald Decker, Gerald Decker, Jamie Iverson, and Rodney Iverson ("Decker") appeal the summary judgment denying insurance coverage. Farmers Union Mutual Insurance Co. ("Farmers Union") cross-appeals portions of the trial court's order including the award of attorney fees and costs in the underlying action. We affirm the summary judgment and reverse the award of attorney fees and costs in accordance with this opinion.

I

[¶ 2] This action arises from a motorcycle accident on the Decker farm. Jamie Iverson, a minor, was injured in the accident as the sole motorcycle rider. Gerald Decker owned the motorcycle, a 1970 Honda Trail 70. Decker has a general farm liability insurance policy issued by Farmers Union. Decker submitted the claim to Farmers Union. After Farmers Union refused coverage, Jamie Iverson and Rodney Iverson, Jamie's father, sued Gerald Decker in the underlying lawsuit. Farmers Union again denied coverage. The complaint in the underlying lawsuit was amended. Following the amendment, Farmers Union retained an attorney to provide Decker with a defense in the underlying action. The parties to the underlying lawsuit entered into a Miller–Shugart settlement agreement assigning Decker's claim against Farmers Union to the Iversons. Farmers Union initiated a declaratory judgment action to determine coverage. Both parties filed summary judgment motions asserting their respective positions on whether the general farm liability policy provided coverage for Jamie Iverson's injury. The trial court granted Farmers Union summary judgment concluding the accident was not covered because the motorcycle did not satisfy the

requirements of the exception to the motor vehicle exclusion in the policy. The trial court awarded Decker attorney fees and costs incurred by Decker during his own representation in the underlying action.

## II

[¶ 3] Interpretation of an insurance contract is a question of law, fully reviewable on appeal. *Hanneman v. Continental Western Ins. Co.*, 1998 ND 46, ¶ 19, 575 N.W.2d 445. "[O]n appeal we fully review the issues by independently examining the insurance policy to determine if there is coverage." *Nationwide Mut. Ins. Companies v. Lagodinski*, 2004 ND 147, ¶ 7, 683 N.W.2d 903.

[¶ 4] We have summarized the standards for construing an insurance policy:

Our goal when interpreting insurance policies, as when construing other contracts, is to give effect to the mutual intention of the parties as it existed at the time of contracting. We look first to the language of the insurance contract, and if the policy language is clear on its face, there is no room for construction. If coverage hinges on an undefined term, we apply the plain, ordinary meaning of the term in interpreting the contract. While we regard insurance policies as adhesion contracts and resolve ambiguities in favor of the insured, we will not rewrite a contract to impose liability on an insurer if the policy unambiguously precludes coverage. We will not strain the definition of an undefined term to provide coverage for the insured. We construe insurance contracts as a whole to give meaning and effect to each clause, if possible. The whole of a contract is to be taken together to give effect to every part, and each clause is to help interpret the others.

*Ziegelmann v. TMG Life Ins. Co.*, 2000 ND 55, ¶ 6, 607 N.W.2d 898 (citations omitted).

[¶ 5] The contract provision at issue is the motor vehicle exclusion and the exception to that exclusion.

Exclusions from coverage in an insurance policy must be clear and explicit and are strictly construed against the insurer. Although this Court construes exclusionary provisions strictly, we do not automatically construe every insurance exclusion provision against an insurer and in favor of coverage for the insured. This Court will not rewrite a contract to impose liability on an insurer if the policy unambiguously precludes coverage. The insured still must prove he falls within an exception to the exclusion in order to benefit from coverage.

*Nationwide Mut. Ins. Companies*, 2004 ND 147, ¶ 9, 683 N.W.2d 903 (citations omitted). The relevant exclusion and exception provisions in Decker's policy state:

Coverage L—Personal Liability and Coverage M—Medical Payments to Others do not apply to bodily injury or property damage:

. . .

f. arising from the ownership, maintenance, operation, use, entrustment to others, loading, or unloading of:

. . .

(2) any motor vehicle loaned to an insured or which an insured owns, rents, or operates. Coverage applies on the insured location if the motor vehicle is subject to be licensed for use on public roads and it is unlicensed and it is used exclusively on the insured location, or is kept there in dead storage.

[¶ 6] Motor vehicle is defined as:

a. a motorized land vehicle . . . designed for travel on public roads or subject to motor vehicle registration;

b. a motorized golf cart, snowmobile, all terrain vehicle, or other motorized land vehicle owned by an insured and designed for recreational use off public roads.

### A

[¶ 7] Decker argues the motor vehicle exclusion does not apply because the motorcycle was not subject to motor vehicle registration; therefore, it was not a motor vehicle. Decker relies on the director of the North Dakota Motor Vehicle Registration's affidavit concluding the motorcycle was not eligible for registration and licensure because of equipment violations. Decker incorrectly concludes that whether the motorcycle is a motor vehicle depends on its eligibility for motor vehicle registration. Under a policy containing a similar definition of motor vehicle, we stated, "The [vehicle] was designed for travel on public roads; thus, the vehicle was a motor vehicle as defined by the plain language of the policy." *Nationwide Mut. Ins. Companies*, 2004 ND 147, ¶ 13, 683 N.W.2d 903. The reference in the definition to a vehicle being "subject to motor vehicle registration" is an alternate basis for qualification as a motor vehicle and is not an additional requirement if the vehicle in question is designed for travel on public roads. The trial court correctly concluded the motorcycle is a motor vehicle under the policy. Therefore, the accident is excluded from coverage under the motor vehicle exclusion unless the exception applies.

### B

[¶ 8] Farmers Union argues the accident is not covered because the motorcycle does not satisfy the requirements of the exception to the motor vehicle exclusion. The exception to the exclusion requires that the incident occurred on the insured location, that the motor vehicle is subject to be licensed for use on public roads, that the motor vehicle is unlicensed, and that it is used exclusively on the insured location. The fact the accident occurred on the insured location and the motorcycle was unlicensed are undisputed. To fall within the exception to the motor vehicle exclusion, the evidence must show that the motorcycle was subject to be licensed and was used exclusively on the insured location.

[¶ 9] Similar to Decker's position that the motor vehicle exclusion does not apply because the motorcycle was not subject to vehicle registration due to its equipment violations, Farmers Union first argues the exception's language "subject to" means the motorcycle had to be equipment-ready for licensure on the date of the accident because this is an occurrence policy. The trial court disagreed stating:

> The sentence "subject to be licensed for use on public roads" is intended to mean that if the policy-holder wished to use the vehicle on public roads, he could do so only after obtaining a license to do so. The wording does not mean that the vehicle must be fit for registration or licensing at this exact moment in time.

The word "subject," as used in the policy, means "under the authority or control of." *Webster's New World Dictionary* 1417 (2d ed.1980); *see also Kimball v. New England Guar. Ins. Co.*, 642 A.2d 1347, 1349 (Me.1994). The trial court correctly found the language of the policy does not require the vehicle to be equipment-ready for licensure on the date of the accident. The plain language of the exception means that if the vehicle were used on public roads, it would be subject to North Dakota license and registration requirements.

[¶ 10] Farmers Union argues the motorcycle did not satisfy the last element of the exception requiring that the motor vehicle is used exclusively on the insured location. Decker admitted to using the

motorcycle at a resort off the insured property but argues the resort was a temporary residence under the policy. Under the policy, "insured location" is defined as:

   a. all farm locations which you own, rent, or operate or other locations you maintain as a residence premises. "Insured location" also includes

   . . .

   c. locations in which you temporarily reside but do not own;

The policy does not define "temporarily reside." The issue is whether Decker was "residing" at the resort during his camping trip. "The plain and ordinary meaning of reside is 'to dwell permanently or for a considerable time.'" *Ctr. Ins. Co. v. Blake*, 370 F.Supp.2d 951, 957 (D.N.D. 2005) (quoting *Webster's Unabridged Dictionary* (2d ed.1997)). Decker's brief summer camping trip is not a "considerable time." "Temporarily reside" clearly contemplates a longer stay than this brief one-time camping trip. If "temporarily reside" were defined as Decker argues, any location an insured stayed overnight would become an "insured location." This interpretation defies common sense. "We will not strain the definition of an undefined term to provide coverage." *Nationwide Mut. Ins. Companies v. Lagodinski*, 2004 ND 147, ¶ 8, 683 N.W.2d 903. Because the motorcycle was not used exclusively on an insured location, it does not satisfy the requirements of the exception to the motor vehicle exclusion and we affirm the trial court's order denying coverage.

■ [¶ 11] In response to this holding, the dissent suggests the court should go further and decide whether use of the motorcycle off the farm premises occurred outside the policy term. We decline to do so because the issue was not raised or argued to the trial court. It was first mentioned in Decker's reply brief on appeal, and then without citation to authority. This Court held reargument and

asked for briefing on this issue and on the timeliness of its being raised. At reargument, the parties confirmed the record did not contain crucial evidence connected to the argument such as the identity of the insurer when the motorcycle was used off the insured premises in 2000, whether the policy under which coverage was sought was the same, or a new, or continuation of the policy in effect when off-farm use occurred, or (if in fact there were multiple policies) whether they had identical provisions. Based on this record, we decline to address the argument because issues not timely raised or adequately briefed are deemed waived. *Riverside Park Condominiums Unit Owners Association v. Lucas*, 2005 ND 26, ¶ 34, 691 N.W.2d 862; *Riemers v. Grand Forks Herald*, 2004 ND 192, ¶ 11, 688 N.W.2d 167; *State v. Koble*, 2000 ND 29, ¶ 5, 606 N.W.2d 521. Consequently, we do not decide whether use of the motorcycle off the insured location outside the policy term impacts the exception to the motor vehicle exclusion.

### III

[¶ 12] Farmers Union argues the trial court erred by awarding Decker attorney fees for defending the underlying action. Farmers Union argues the duty to defend did not arise until Iverson filed the amended complaint. Farmers Union argues there was no possibility of coverage based on the original complaint's allegations. After the complaint was amended, Farmers Union provided Decker a defense admitting it contained allegations that could possibly be covered under the policy. Farmers Union paid for the defense of the amended complaint through settlement. The trial court determined Farmers Union duty to defend arose when the claim was originally asserted against Decker.

■ [¶ 13] Attorney fees are recoverable as damages if the insured can show

a breach of the insurer's duty to defend. *State Farm Fire & Cas. Co. v. Sigman,* 508 N.W.2d 323, 326 (N.D.1993); *Prince v. Universal Underwriters Ins. Co.,* 143 N.W.2d 708, 717 (N.D.1966); *see also Am. Family Ins. Co. v. Dewald,* 597 F.2d 1148, 1151 (8th Cir.1979). Although the duty to defend is broader than the duty to indemnify under an insurance policy, the duty to defend is generally determined by the allegations of an injured claimant. Where the claims against the insured potentially come within the coverage provisions of the policy, the insurer has a duty to defend. While the trial court acknowledged our jurisprudence on determining the duty to defend, citing *Applegren v. Milbank Mut. Ins. Co.,* 268 N.W.2d 114, 116 (N.D.1978); *Kyllo v. Northland Chem. Co.,* 209 N.W.2d 629, 634 (N.D.1973); *Schultze v. Cont'l Ins. Co.,* 2000 ND 209, ¶ 8, 619 N.W.2d 510, it nevertheless held Farmers Union's duty to defend began when the original claim was asserted against Decker. This is inconsistent with its holding that a motorcycle is a motor vehicle excluded from coverage under the terms of the policy.

[¶ 14] An insurer does not have a duty to defend an insured if there is no possibility of coverage under the policy. *Schultze,* 2000 ND 209, ¶ 8, 619 N.W.2d 510. We have defined when the duty to defend arises:

> A liability insurer's obligation to defend its insured is ordinarily measured by the terms of the insurance policy and the pleading of the claimant who sues the insured. If the allegations of the claimant's complaint could support recovery upon a risk covered under the insurer's policy, a liability insurer has a duty to defend its insured. We have formulated the duty to defend to require a liability insurer to defend an underlying action against its insured if the allegations in the complaint give rise to

potential liability or a possibility of coverage under the insurance policy. *Id.* (citations omitted).

[¶ 15] The original complaint alleged the accident occurred on a dirt bike motorcycle on the farm and fell within the motor vehicle exclusion. The duty to defend is measured by the terms of the policy and the pleading of the claimant who sues the insured. *Applegren,* 268 N.W.2d at 116 (citing *Kyllo v. Northland Chemical Co.,* 209 N.W.2d 629, 634 (N.D.1973); *Eichler Homes, Inc. v. Underwriters at Lloyd's, London,* 238 Cal.App.2d 532, 47 Cal.Rptr. 843, 847 (1965)). After Farmers Union denied coverage based upon the original complaint, Iverson hired an attorney with experience in insurance litigation to add specific language to the complaint that would bring the allegations within the insurance policy's coverage. The amended complaint inserted the following language that could possibly bring the accident within the exception to the motor vehicle exclusion.

5

The motorcycle was designed for travel on public roads and was subject by law to licensure if used upon the public roads.

6

The motorcycle was not, however, used on the public roads, but was operated exclusively upon the defendant's premises, or in other places not owned by the defendant, off the public roads, where the defendant was physically present, residing on a temporary basis.

An insurer does not have a duty to defend unless there is a possibility of coverage contained in the allegations of the claimant's complaint. *Schultze,* 2000 ND 209, ¶ 8, 619 N.W.2d 510. Where an insurer has rightfully denied coverage, the insur-

er's duty may be revived by the insured's new allegations that possibly bring the claim within the scope of the policy's provisions. *Senger v. Minnesota Lawyers Mut. Ins. Co.*, 415 N.W.2d 364, 370 (Minn.Ct. App.1987). Farmers Union's duty to defend arose when the complaint was amended.

[¶ 16] This Court has not previously decided when an insurer's responsibility for attorney fees arises after a complaint is amended to include a possibility of coverage thereby reviving the insurer's duty to defend. A review of jurisdictions deciding this issue concludes an insurance company is only responsible for the portion of attorney fees incurred from the time the duty to defend arose. *See Lafarge Corp. v. Hartford Cas. Ins. Co.*, 61 F.3d 389, 397 (5th Cir.1995); *Auto Owners Ins. Co. v. Tripp Constr., Inc.*, 821 So.2d 1157, 1159 (Fla.Dist.Ct.App.2002). Therefore, Farmers Union was only obligated to pay Decker's defense after the amended complaint. We reverse the award of attorney fees incurred before the complaint was amended and the duty to defend arose.

## IV

[¶ 17] We affirm the summary judgment denying insurance coverage and reverse the award of attorney fees and costs incurred by Gerald Decker in his own representation in the underlying action.

[¶ 18] DALE V. SANDSTROM and DANIEL J. CROTHERS, JJ., concur.

VANDE WALLE, Chief Justice, concurring in part and dissenting in part.

[¶ 19] I concur with the majority opinion insofar as it determines the questions raised in Decker's original brief on appeal. I disagree with the final disposition.

[¶ 20] I would not go as far as the dissent appears to do in placing the entire responsibility on the court to interpret the insurance contract as a whole and enforce

it if there is coverage, notwithstanding the issues raised by the parties. But, in this instance, I agree with the dissent to the extent that the issue of the timing of the events under the terms of the policy is so elementary to the issue of coverage that the court should consider the matter even where, as here, the precise argument was not made until the reply brief was filed. Although that procedure might appear to allow an appellant to ignore the appellate rules and case law governing appellate procedure, the court should be in a position to determine when the issue is legitimate and legitimately raised and when it is not.

[¶ 21] I also agree with the dissent insofar as it concludes there was coverage under the terms of the policy because the use upon which Farmers Union denied coverage took place prior to the term of the policy and not during the policy period.

[¶ 22] Gerald W. VandeWalle, C.J.

MARING, Justice, dissenting.

[¶ 23] I respectfully dissent from the majority opinion.

[¶ 24] Farmers Union issued a Farm Liability Insurance Policy to the Deckers. The term of the policy covering this accident was from November 25, 2001, to November 25, 2002. Our Court has said:

Our goal when interpreting insurance policies, as when construing other contracts, is to give effect to the mutual intention of the parties as it existed at the time of contracting. We look first to the language of the insurance contract, and if the policy language is clear on its face, there is no room for construction. "If coverage hinges on an undefined term, we apply the plain, ordinary meaning of the term in interpreting the contract." While we regard insurance policies as adhesion contracts and resolve ambiguities in favor of the insured, we

will not rewrite a contract to impose liability on an insurer if the policy unambiguously precludes coverage. We will not strain the definition of an undefined term to provide coverage for the insured. We construe insurance contracts as a whole to give meaning and effect to each clause, if possible. The whole of a contract is to be taken together to give effect to every part, and each clause is to help interpret the others.

*Nationwide Mut. Ins. Cos. v. Lagodinski,* 2004 ND 147, ¶ 8, 683 N.W.2d 903 (quoting *Ziegelmann v. TMG Life Ins. Co.,* 2000 ND 55, ¶ 6, 607 N.W.2d 898). The Farm Liability Insurance Policy, under Coverage L—Personal Liability, provides indemnification for damages for which an insured is found liable because of bodily injury. Under the policy, "[b]odily injury" means "physical injury to a person caused by an occurrence." The policy defines occurrence to mean "an accident, including continuous or repeated exposure to substantially the same *general harmful conditions,* which results, *during the policy period,* in a. bodily injury; or b. property damage." (Emphasis added.) "Generally, an 'occurrence' policy provides coverage if the event insured against takes place within the policy period, regardless of when the injured party makes a claim." *Kief Farmers Coop. Elevator Co. v. Farmland and Mut. Ins. Co.,* 534 N.W.2d 28, 36 (N.D.1995). The policy also contains an exclusion from Coverage L, commonly known as the "motor vehicle" exclusion. The purpose for this exclusion is also commonly known. Insurance companies issuing farm liability policies wish to avoid insuring the risks attendant to motor vehicles driven on public roads. Those are risks covered by automobile or motorcycle policies. Farmers Union in fact stated this very reason in its appellee's brief:

> The reason for the "motor vehicle" exclusion should be obvious. This is a farm liability insurance policy, it is not a motor vehicle insurance policy. Farmers Union Mutual also sells motor vehicle insurance and does not provide insurance coverage for motor vehicles in a farm liability insurance policy, except under the very limited circumstances covered in the exception to the exclusion.

[¶ 25] The exception to the motor vehicle exclusion states:

> (2) ... Coverage applies on the insured location if the motor vehicle is subject to be licensed for use on public roads and it is unlicensed and it is used exclusively on the insured location, or is kept there in dead storage.

Exclusions for Coverage L 1(f)(2). The farm liability policy, therefore, does provide coverage for unlicensed motor vehicles used solely on the farm premises.

[¶ 26] The motorcycle involved in this case was never driven on public roads and from July 1999, when it came into Gerald Decker's possession, to June 23, 2002, the date of the accident, was never registered. The owner, Gerald Decker, decided not to register this motorcycle and never intended to operate it on any public road. The motorcycle was used off the farm premises once at a campsite in the summer of 2000. That was two years before the accident on June 23, 2002, and not during the policy period covering the accident. The policy period was annual and was from November 25, 2001, to November 25, 2002. During that policy period, the motorcycle was used exclusively on the "insured location" or farm premises. The exception to the exclusion, therefore, provides coverage for this accident. This accident, which occurred on the farm premises with an unlicensed motorcycle used exclusively on the farm premises, is the very type of liability risk intended to be covered by the exception to the exclusion of this Farm Liability Insurance Policy. The coverage provided

by the exception to the exclusion is for motor vehicles subject to be licensed, but unlicensed. It would not make any sense to exclude this motorcycle forever from coverage because of one use off-premises that occurred outside the policy period. I conclude there is coverage for the motorcycle accident and alleged bodily injury.

[¶ 27] Because it was not specifically raised until Decker's reply brief, the majority declines to address whether the "exclusive use" of the unregistered motor vehicle on the "insured's location" must occur during the life of the motor vehicle or only during the policy period. "The construction of a written contract to determine its legal effect is a question of law for the court to decide and, on appeal, we independently examine and construe the contract to determine if the trial court erred in its contract interpretation." *Moen v. Meidinger*, 547 N.W.2d 544, 546 (N.D.1996); *State ex rel. State Fire and Tornado Fund of North Dakota Ins. Dep't v. North Dakota State University*, 2005 ND 75, ¶ 12, 694 N.W.2d 225. Section 9–07–06, N.D.C.C., requires that a contract be interpreted as a whole. The primary goal is to give effect to the mutual intent of the parties. N.D.C.C. § 9–07–03. "The parties' intent must be ascertained from the entire instrument, and every clause, sentence, and provision should be given effect consistent with the main purpose of the contract." *U.S. Bank, Nat'l Ass'n v. Koenig*, 2002 ND 137, ¶ 8, 650 N.W.2d 820. We have said: "It is an important function of the courts to 'maintain and enforce contracts, unless it clearly appears they contravene public policy or express law.'" *Continental Casualty Co. v. Kinsey*, 499 N.W.2d 574, 580 (N.D.1993) (quoting *Seher v. Woodlawn School Dist. No. 26*, 79 N.D. 818, 59 N.W.2d 805, 810 (1953)). I am of the opinion that it is our Court's responsibility to interpret the insurance contract as a whole and enforce it if there is coverage.

[¶ 28] Further, Farmers Union brought the action as one for declaratory relief under N.D.C.C. ch. 32–23, requesting that the court enter judgment "construing the provisions of the Farm Liability Insurance Policy issued by Farmers Union to Deckers and adjudging that the policy does not provide coverage." Chapter 32–23, N.D.C.C., is a uniform law adopted in North Dakota in 1923. The following provisions of the Declaratory Judgments Act are relevant in this case:

A court of record within its jurisdiction shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed.

N.D.C.C. § 32–23–01.

Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and may obtain a declaration of rights, status, or other legal relations thereunder.

N.D.C.C. § 32–23–02.

This chapter is remedial. Its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and it is to be construed and administered liberally.

N.D.C.C. § 32–23–12.

[¶ 29] The dispute in this case directly involves the construction of the insurance contract and whether the insured is entitled to coverage under its terms. The purpose of the Declaratory Judgments Act is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations" in an underlying justiciable controversy.

*Riverside Park Condominiums Unit Owners Ass'n v. Lucas,* 2005 ND 26, ¶ 25, 691 N.W.2d 862; N.D.C.C. § 32–23–12. "Our declaratory judgment act is by its own terms remedial and is to be construed and administered liberally." *Iverson v. Tweeden,* 78 N.D. 132, 48 N.W.2d 367, 371 (1951); N.D.C.C. § 32–23–12. I am of the opinion that when a court undertakes to declare the rights of parties under an insurance contract in a declaratory judgment action, it must review the contract as a whole. The court cannot ignore terms of the contract relevant to the declaration of the rights of the parties.

[¶ 30] Finally, our Court is no stranger to addressing issues on appeal that were not raised or briefed to the trial court or on appeal. *See State v. Keller,* 2005 ND 86, 695 N.W.2d 703; *Tank v. Tank,* 2004 ND 15, 673 N.W.2d 622.

[¶ 31] I also am of the opinion that Farmers Union is liable for all the attorney's fees and costs incurred by the insured for the defense of the tort action. I dissent from that part of the majority's opinion that concludes Farmers Union is only obligated to pay Decker's attorney's fees after the amended complaint.

[¶ 32] Our Court has endorsed the view that "an insured purchases liability insurance for protection from litigation expense." *State Farm Fire and Casualty Co. v. Sigman,* 508 N.W.2d 323, 326 (N.D. 1993). The insured has a contractual right to have the insurer defend him against actions at the insurer's expense. The duty to defend is broader than the duty to indemnify. *See Hart Constr. Co. v. American Family Mut. Ins. Co.,* 514 N.W.2d 384, 389 (N.D.1994). We have followed the general rule that an insurer's duty to defend is measured by the terms of the insurance policy and the allegations of the plaintiff's complaint. *Kyllo v. Northland Chemical Company,* 209 N.W.2d 629, 634 (N.D.1973); *Applegren v.*

*Milbank Mutual Insurance Co.,* 268 N.W.2d 114, 118 (N.D.1978). Our decisions in *Kyllo* and *Applegren,* however, "require an insurer to defend actions against an insured if the allegations in the complaint against the insured give rise to *potential liability* or a *possibility of coverage* under the language in the insurance policy." *National Farmers Union Prop. and Cas. Co. v. Kovash,* 452 N.W.2d 307, 309 (N.D.1990) (emphasis added). *See* 14 Couch on Insurance, 3d § 200:12 (1999). "Generally, where there is doubt as to whether the duty to defend exists, such doubt is resolved in favor of the insured." *Kyllo,* 209 N.W.2d at 634. Our Court, in *Kyllo,* quoting *Hartford Accident & Indemnity Co. v. Pacific Indemnity Co.,* 249 Cal.App.2d 432, 57 Cal.Rptr. 492 (1967), embraced the view that when there is doubt as to whether the injured party's complaint stated facts sufficient to bring the injury within the coverage "the insurer is obligated to undertake the defense of the action and to continue such defense at least until it appears that the claim is not covered by the policy." *Id.*

The underlying complaint need not track the policy language for there to be coverage as, under the liberal rules of notice pleading, [the] complaint need only indicate the type of litigation involved so that [the] insurer would have fair notice of the claim and its defenses. 14 Couch on Insurance § 200:18 (1999); *Franklin v. Western Nat. Mut. Ins. Co.,* 574 N.W.2d 405, 407 (Minn.1998) (holding, "the words of the complaint need not precisely match the words of the policy, they must simply put the insurance company on notice of a claim within the policy coverage"). In the present case, the injured party would have had to allege in his complaint that the motorcycle he was riding was "used exclusively" on the "insured location" for a duty to defend to arise according to the majority opinion. Yet the

injured party who brings the action against the insured is not ordinarily drafting a pleading to address a question of coverage that may arise between the insured and insurer. An insured's right to a defense should not be made to depend upon the precision of a third party's pleading.

[¶ 33] In addition, North Dakota has notice pleading under which a complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." N.D.R.Civ.P. 8(a); *Tibert v. Minto Grain, LLC,* 2004 ND 133, ¶ 18, 682 N.W.2d 294. "North Dakota's rules do not require plaintiffs to 'allege every element of their claim.' " *Id.* (quoting *Kaler v. Kraemer,* 1998 ND 56, ¶ 7, 574 N.W.2d 588). The missing fact in the complaint in the present case is one that would likely not even be known by a plaintiff bringing the cause of action. The allegations of the complaint therefore should be reasonably interpreted in determining whether the claims are within the coverage and any doubt or ambiguity resolved in the insured's favor.

[¶ 34] If we examine the allegations of the complaint, the only fact alleged in the amended complaint and not in the original complaint is that the motorcycle was used exclusively on the insured location. Farmers Union knew from the original complaint that an "occurrence," an accident resulting in bodily injury, was alleged to have occurred because of the use of a trail bike on its insured's farm premises. The missing fact that would clearly bring the claim within the coverage of the exception to the exclusion, however, can be inferred from the type of motor vehicle involved, which was an unregistered dirt bike, and from the location of the accident, which was the insured's farm premises. Here, the allegations of the complaint give rise "to potential liability or a possibility of coverage under the insurance policy." *National Farmers Union Prop. and Cas.*

*Co. v. Kovash,* 452 N.W.2d 307, 309 (N.D. 1990); *see Fisher v. Am. Family Mut. Ins. Co.,* 1998 ND 109, ¶ 6, 579 N.W.2d 599.

[¶ 35] Under North Dakota law, an insurer who questions its duty to defend can very quickly obtain an answer by bringing a declaratory judgment action for a decision on its duty to defend. N.D.C.C. § 32–23–06. An insurer has a remedy to resolve issues of doubtful coverage and duty to defend. *See Mobile Oil Corporation v. Maryland Cas. Co.,* 288 Ill.App.3d 743, 224 Ill.Dec. 237, 681 N.E.2d 552, 560 (1997) (holding that "[w]hen an underlying complaint presents an issue of potential insurance coverage, and the insurer believes that the policy does not cover the claim, the insurer may not refuse to defend the insured, but must either defend the suit under a reservation of rights or seek a declaration of no coverage").

[¶ 36] Considering the purpose of the Farm Liability Insurance Policy, the grant of coverage under the exception to the exclusion, the inferences that can be reasonably drawn from the allegations of the complaint, and the "potential" or "possibility" of coverage for the accident, the duty to defend arose at the time of the original complaint.

[¶ 37] I would reverse the summary judgment and hold that the Farmers Union policy provides coverage, affirm the entire award of attorney's fees for the defense of the tort action, and remand for an award of attorney's fees for the defense of the declaratory judgment action.

[¶ 38]   Mary Muehlen Maring